[Civ. No. 11490. Second Appellate District, Division One.—August 10, 1938.]

PEARL EDWARDS EDDY, a Minor, etc., Appellant, v. CITY OF LOS ANGELES (a Municipal Corporation) et al., Respondents.

H. E. Gleason and John F. Poole for Appellant.

Ray L. Chesebro, City Attorney, Frederick von Schrader, Assistant City Attorney, and Albert E. Wheatcroft and Bourke Jones, Deputies City Attorney, for Respondents.

WHITE, J.—Plaintiff, Pearl Edwards Eddy, a minor of the age of 17 years, by and through her guardian *ad litem*, commenced this action against the City of Los Angeles and E. L. Vinsant to recover damages for personal injuries received by the minor plaintiff, a pedestrian, while crossing York Boulevard, a public street in the City of Los Angeles, in the lane marked for pedestrians, when she was struck by an automobile owned by the defendant city and driven by defendant Vinsant in the course of his employment.

From the judgment in favor of defendant city, plaintiff has appealed, and has brought up the judgment roll only. It must therefore be presumed that there was evidence at the trial sufficient to support the findings; and unless as a matter of law it can be said that the findings do not support the judgment, the latter must be affirmed.

The trial court found that on February 6, 1934, defendant city owned the automobile in question and that the same was being driven by defendant Vinsant in the course of his employment as a member of the Los Angeles city police department; that the automobile at the time and place of the accident was being driven in response to an emergency call and was equipped with a horn in good order, *but was not equipped with a siren of any type or description whatsoever.* The court further found that the minor plaintiff as a pedestrian was crossing York Boulevard in the lane marked for pedestrians, and that defendant Vinsant drove and operated the automobile in "such a grossly careless and negligent manner as to cause the same to violently collide with and strike the plaintiff while plaintiff was so crossing York

Boulevard, and in particular, that while plaintiff was so crossing said York Boulevard in said pedestrians' lane, there were two motor vehicles parked parallel to each other, just to the east of said pedestrian lane, occupying almost all of the north half of said York Boulevard; that said defendant E. L. Vinsant on approaching said intersection was recklessly, carelessly and negligently driving at 45 miles per hour; that within 200 feet thereof he sounded his horn, and without slackening his speed until almost the moment of impact, recklessly, carelessly and negligently turned his automobile to the left of said parked vehicles and upon the south (wrong) side of the street, and then proceeded on and recklessly, carelessly and negligently struck plaintiff, who had also then reached the south side of said street''.

The court further found that by reason of the acts of defendant city and its servant and employee plaintiff suffered injuries, to her damage in the sum of $1756; and that such damages sustained by plaintiff were not the result of an inevitable or unavoidable accident; and further, that plaintiff was not guilty of contributory negligence.

Upon these findings, the court made the following conclusions of law: ''That said motor vehicle at the time of said collision was an authorized emergency vehicle being operated by said officer of said police department in responding to an emergency call; that said defendant, E. L. Vinsant, was grossly negligent in the operation of said vehicle, but that under the express provisions of law he is not liable in damages thereof, nor is said City of Los Angeles.'' Based upon the foregoing, judgment was entered in favor of defendants.

Section 1714½ of the Civil Code, in effect at the time of the happening of this accident on February 6, 1934 (since repealed and reenacted as section 400 of the Motor Vehicle Code), in so far as material to this cause, may be summarized as providing that a city and other political subdivisions owning any motor vehicle are responsible for injuries, death or damage ''as the result of the negligent operation of any said motor vehicle by an officer, agent, or employee, or as the result of the negligent operation of any other motor vehicle by any officer, agent or employee when acting within the scope of his office, agency or employment''. The statute further provides that in the event of a recovery against the

entities mentioned, they "shall be subrogated to all the rights of the person injured, against the officer, agent or employee, as the case may be, and may recover from such officer, agent or employee the total amount of any judgment, and costs". Provision is also therein made enabling the city or other political subdivision to insure against the liability created by the statute.

In their efforts to sustain the judgment herein notwithstanding the findings of negligence amounting to wilful misconduct, respondents claim that the legislature did not intend to include the operation of emergency motor vehicles in the exercise of fundamentally governmental functions when it enacted section 1714½ of the Civil Code, because, argues respondent city, since the law expressly relieves from personal liability the drivers of police and fire department motor vehicles when responding to emergency calls and alarms (Stats. 1929, chap. 263), it of necessity follows that the legislative body had no intention of imposing liability in such cases upon a municipality, as that would be contrary to the well-settled rule of law that a master will not be held liable for an act participated in only by a servant, but for which the servant is exempted from liability. In other words, respondent city contends that its liability is secondary, and when the employee who commits the tort and whose liability is primary is relieved from responsibility, the master cannot be held responsible when its servant is relieved. It is further claimed by respondent city that the portion of the statute imposing liability upon the municipality is inseparable from the right of subrogation of the municipality against the officer or employee committing the tort, and that because the exemption of the employee from personal liability destroys the city's right of subrogation, it was never intended that the latter should be held responsible when its vehicle was engaged in making an emergency police call.

■ With reference to the first contention of respondent city, it is firmly established in the case of *Lucas* v. *City of Los Angeles*, decided by the Supreme Court, January 20, 1938, and appearing in 10 Cal. (2d) 476 [75 Pac. (2d) 599], that under certain circumstances a governmental agency is liable under the provisions of section 1714½, *supra*, for the mis-

conduct of its employees in the operation of an emergency vehicle.

■ The remaining contentions raised by respondent city were held to be without merit in the case of *Raynor* v. *City of Arcata*, 11 Cal. (2d) 113 [77 Pac. (2d) 1054], decided by the Supreme Court April 1, 1938. In that decision, while conceding that the decisions of the appellate court were up to that time somewhat confusing on the question of whether a public employer may be held liable for ''negligent operation'' of a police or fire department car under section 1714½ of the Civil Code when the operator himself is free from liability under chapter 263 of the Statutes of 1929, *supra*, the Supreme Court clarifies any then existing confusion with the following quotation from *Lossman* v. *City of Stockton*, 6 Cal. App. (2d) 324 [44 Pac. (2d) 397]:

'' . . . It is a well-recognized rule that statutes upon the same subject-matter should be read together and each given full force and effect as far as possible. The legislature recognized that members of the police and fire departments in the performance of their duties are often called upon to exceed the ordinary speed limit and take the right of way. If such employees were compelled to weigh the chances and assume a personal responsibility, speed and efficiency would be affected. The legislature, however, realized that such operation of motor vehicles on the streets did create a hazard to the general public and therefore provided that the city should be held liable when the exercise of governmental functions resulted in injury to its people. The legislature also at the same time authorized its governmental agencies to obtain insurance to indemnify itself against loss by such actions. If, too, an employee is unduly reckless or careless in the operation of the vehicle under his control the municipality still retains its rule-making and disciplinary powers and can, as any private concern, under similar circumstances, exercise restraint over its employees.

''It cannot be argued that because the state deemed it expedient to waive its right of subrogation against its employees, it thereby denied a right of action against itself. Subrogation is the substitution of one in the place of another, and if for any reason the one in whose favor such subrogation runs cares to waive such privileges, no one can complain.

'Subrogation is considered as the creature of equity and is so administered as to secure real and essential justice without regard to form.' . . . ''

■ While mindful of the rule that statutes imposing a liability on governmental agencies in derogation of the common law are to be strictly construed, the Supreme Court calls attention to the fact that this does not confer upon courts the power to nullify legislation where the statute itself evinces a clear intention on the part of the lawmakers to depart from the common-law rule. In the case of *Raynor* v. *City of Arcata, supra,* it is held that the liability of the city or other public employer still rests on the doctrine of *respondeat superior,* because in order that the public employer may be held, there must be a ''negligent operation'' of the vehicle by the employee. ■ As therein pointed out, while it is true the fireman or policeman responding to an emergency call is relieved of personal liability for his negligence and the city is held therefor, nevertheless the ''negligent operation'' of an authorized emergency vehicle responding to an emergency call arises only where the driver of such vehicle fails to give a timely warning or otherwise makes an ''arbitrary exercise'' of the exemption from the rules of the road which can be said to amount to wilful misconduct. It is further held in the same case that the decisions which hold that after an ordinary private employee has been held not negligent, his private employer may not be held on the doctrine of *respondeat superior,* are not controlling in cases like the one now before us, for the reason that in the situation before us the exemption of the employee does not rest on an adjudication of his freedom from negligence, but on a statutory declaration that he should be free from personal liability for his negligent acts. In the final analysis, legislation of the character with which we are here concerned simply tends to protect life and limb, and, as was held in the Raynor case, *supra,* it arises from the exercise of the police power of the state which inheres in sovereignty, and the purpose and intent of the legislation is in the interest of the public welfare.

■ There is no merit in respondents' contention that under the rule requiring strict construction of statutes imposing additional liability on governmental agencies, it cannot

be held that the sounding of a siren is necessary to require a pedestrian to yield the right of way for the reason, as respondent city argues, that the statute providing for the sounding of a siren by an emergency vehicle mentions only "other vehicles" upon the highway and makes no mention of pedestrians. Manifestly, it would do violence to reason to hold that by the passage of this legislation the lawmaking power intended to impose upon the drivers of emergency vehicles the duty to give notice of their demand for the right of way only to those persons who were driving other vehicles and not to pedestrians. We hold that notice to the person required to yield the right of way is essential, whether that person be riding in another vehicle or lawfully walking upon the public highway, so that either may have a reasonable opportunity to stop or otherwise yield the right of way, before such person may be charged with the obligation fixed by law to give precedence to emergency vehicles. Plaintiff's duty to give the right of way to the police emergency vehicle was based upon her knowledge of its approach. Unless she knew or in the exercise of ordinary care should have known that an emergency vehicle was approaching, plaintiff was under no obligation to anticipate its presence. It is the sounding of the audible signal that fixes the right of way and relieves the emergency car driver of negligence.

The very fact that emergency vehicles are allowed to use sirens while other vehicles are forbidden the use of them immediately suggests that the legislative authority intended that a peculiar and significant warning, other than the usual and ordinary sounding of a horn, should be given by the drivers of emergency vehicles in order to claim their superior rights to the use of the highway. ■ A mere reading of the findings made by the trial court at once suggests that the actions of the driver of the emergency vehicle here in question present circumstances disclosing knowledge upon his part, express or implied, that an injury was a probable result of his driving at an excessive rate of speed on the wrong side of the street, without his vehicle being equipped with or his sounding a siren at all, or even sounding his horn until within two hundred feet of the intersection, and amounted to an absolute disregard of the consequences of such conduct upon his part. There is no question but what the driver of the

emergency vehicle here involved was guilty of an "arbitrary exercise" of the privileges conferred upon him by reason of his status. In the instant case it is true that the findings of the trial court determined that there was an emergency call within the terms of the statute, but the same findings indicate that the emergency vehicle was not equipped with a siren; that no statutory warning was given; and clearly show that the exercise of such privileges as are accorded emergency vehicles was in this instance "arbitrary".

As to the defendant E. L. Vinsant, he being the driver of an emergency vehicle responding to an emergency police call, he is exempt from personal liability for his negligence under the provisions of the Statutes of 1929, *supra,* and the judgment in his favor was therefore correct.

As to the defendant City of Los Angeles, a reversal of the judgment is required, but a new trial is unnecessary, for the reason that in its findings the trial court determined the amount of damage sustained by plaintiff were she entitled to recover, and we are bound to assume, when the judgment roll alone is before us, that sufficient evidence was introduced at the trial to support this, as well as all other findings.

For the foregoing reasons, therefore, the judgment is affirmed as to the defendant E. L. Vinsant, while as to defendant City of Los Angeles the judgment is reversed, with directions to the court below to enter judgment in favor of the plaintiff in the sum of $1756 as against said defendant city.

York, P. J., and Doran, J., concurred.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 7, 1938. Shenk, J., voted for a hearing.