[Civ. No. 7462. Third Dist. June 30, 1948.]

VERA CAVAGNARO et al., Respondents, v. CITY OF NAPA, Appellant.

Appelbaum & Mitchell and Coombs & Dunlap for Appellant.

King, King & Ghidella and Clarence N. Riggins for Respondents.

ADAMS, P. J.—This is an appeal from a judgment in favor of plaintiffs, entered on the verdict of a jury, awarding damages for the death of Henry P. Cavagnaro, husband of one of the plaintiffs and father of the other two. Cavagnaro's death was caused by a fire truck belonging to defendant which ran over him while he was in an intersection directing traffic in the vicinity of a fire in the city of Napa.

Decedent, who was about 62 years of age, was employed as a clerk in the office of the California Highway Patrol, and was an uncompensated Deputy Sheriff of Napa County and wore a deputy sheriff's badge. He had previously been a traffic officer for the county of Napa, during which occupation he had been crippled in an accident which had rendered his left arm practically useless, and had crippled him to the extent that he could not run and walked with a limp.

The scene of the accident was the intersection of Third Street and Soscol Avenue. Third Street runs east and west and Soscol Avenue approximately north and south, the latter street terminating a few hundred feet north of its intersection with Third Street. About 2 o'clock p.m. on the day of the accident a fire broke out on premises owned by Cavagnaro's brother, situated near the north end of Soscol Avenue. Cavagnaro was at the time at a hotel on the east side of Soscol Avenue, north of Third Street. He immediately proceeded to Third Street and and took up a position in the crosswalk, holding back traffic coming from the east on that street; and when two fire engines responding to the fire alarm appeared on the scene, traveling from west to east on Third Street, he directed the first one up Soscol Avenue, toward the fire. When the second engine, which was driven by Paul Bohen, reached the intersection it first turned northward toward the fire. It then stopped or paused slightly, then proceeded at reduced speed eastward and then southward, swinging in an arc which carried it into the intersection where Cavagnaro was standing, and striking him, his body falling under the truck which continued to progress

a distance estimated by one witness as from 10 to 12 feet, before coming to a stop.

Plaintiffs in their complaint based their right to recover damages upon two grounds, the first that the brakes of the fire engine were "inadequate to bring said fire truck to a complete stop when operated upon a dry asphalt or concrete surface where the grade does not exceed 1%, at a speed of ten miles an hour or less, within a distance of 9.3 feet, and within a distance of 20.8 feet when operated on such a pavement under such conditions at a speed of fifteen miles an hour" (Veh. Code, § 670); the second was that Bohen "drove and operated said fire truck in a careless and negligent manner and with wilful disregard for the safety of said Henry P. Cavagnaro."

In its answer defendant denied the aforesaid allegations, and charged Cavagnaro with contributory negligence, asserting also that the latter had voluntarily placed himself in a position of danger and thereby assumed the risks incident thereto.

Subsequent to the rendition of the verdict by the jury, defendant moved for a new trial upon all of the statutory grounds. This motion was denied, at which time the trial court, as part of its order of denial, rendered an opinion in which it set forth evidence which, in its opinon, was sufficient to sustain the implied findings of the jury in support of the allegations of plaintiffs' complaint. If there be such evidence the verdict of the jury and the conclusion of the trial court are binding upon this court.

Appellant contends that the fire engine was not operated with wilful disregard for the safety of decedent, that it was not maintained and operated in a dangerous and defective condition with inadequate brakes, that decedent was guilty of contributory negligence as matter of law, that certain rulings on evidence made by the trial court were prejudicial to appellant, and that the jury was misdirected in various respects.

In support of its first contention appellant asserts that the fire engine was an authorized emergency vehicle within the provisions of the Vehicle Code, and was being driven in response to an emergency call, and that the evidence is insufficient to show that the driver of same drove it without due regard for the safety of persons using the highway, or that he was arbitrarily exercising the privileges declared in section 454 of the Vehicle Code or was guilty of wilful misconduct.

Section 454, so far as pertinent here, provides that the driver of an emergency vehicle when responding to a fire alarm shall be exempt from certain provisions of the vehicle code, but only when the said vehicle sounds a siren as may be reasonably necessary; also that the driver of such vehicle shall not be relieved from the duty to drive with due regard for the safety of all persons using the highway, nor be protected from the consequences of an arbitrary exercise of the privileges of the section.

Both appellant and respondents rely upon *Lucas* v. *City of Los Angeles,* 10 Cal.2d 476 [75 P.2d 599]. In that case a police automobile, operated upon authorized emergency business, but traveling at a high rate of speed and disregarding a traffic signal, crashed into a car at an intersection, inflicting injuries upon plaintiff who was riding in said car as a guest. A judgment for plantiff was reversed, the court saying that as the siren of the police car was sounding the case must be considered one where the statutory warning was given, wherefore the vehicle was exempt from the rules applying to speed and traffic signals; and that the sole question of law involved was whether, under the statutes then in effect, the driver of the police car was arbitrarily exercising the rights conferred upon him by section 454 of the Vehicle Code, or was driving without due regard for the safety of others using the highway. It was said that ''due regard'' for the safety of others means that the driver of the emergency vehicle shall, by suitable warning, give others a reasonable opportunity to yield the right of way, and that negligence cannot be predicated upon speed or right of way if proper warning is given; and it was concluded that the judgment should be reversed since the emergency was conceded, the sounding of the siren was proved by the only substantial evidence offered, and an arbitrary exercise of the privileges was not shown. However, in considering what might constitute an arbitrary exercise of the privileges conferred by section 454, *supra,* it was said that where an operator of an emergency vehicle has given the required warning, but sees that another has not heard or heeded it, it might be an arbitrary exercise of the privileges to continue on into an inevitable collison.

In numerous cases the necessity for an emergency vehicle to give due warning by horn or siren has been considered. In *Raynor* v. *City of Arcata,* 11 Cal.2d 113, 116 [77 P.2d 1054], it was said that the vital issue was whether the fire chief,

whose car collided with plaintiff's car when the chief was responding to a fire alarm, sounded its siren as he proceeded at a high rate of speed, and that the evidence was conflicting on this matter. While a judgment for plaintiff was reversed in that case, the reversal was based upon erroneous instructions. In *Eddy* v. *City of Los Angeles,* 28 Cal.App.2d 89, 96 [82 P.2d 25], a judgment for defendant was reversed, it appearing that the emergency vehicle, a police car, was not equipped with a siren, and that the driver only sounded his horn when he was some 200 feet from plaintiff whom he struck while she was in a crosswalk. Also see *Reed* v. *City of San Diego,* 77 Cal.App.2d 860, 868 [177 P.2d 21]; *Isaacs* v. *City and County of San Francisco,* 73 Cal.App.2d 621, 626 [167 P.2d 221]; *Head* v. *Wilson,* 36 Cal.App.2d 244, 247 [97 P.2d 509]; *Stone* v. *City and County of San Francisco,* 27 Cal. App.2d 34, 37-40 [80 P.2d 175], in all of which cases the necessity for the giving of warning by the sounding of a siren or other sound equipment is emphasized. Such cases do not hold, however, that even where a warning signal is given, a defendant city may not be held liable where the driver of an emergency vehicle nevertheless fails to drive with due regard for the safety of others, or arbitrarily exercises the privileges declared by statute. (See 136 A.L.R., p. 590 et seq.)

In the case before us there is evidence that Bohen's siren was sounding as he proceeded into the intersection, but there is also evidence that after he hesitated or paused before he drove his vehicle in the arc and struck Cavagnaro, his siren was not sounding. Therefore, whether Bohen gave due warning or not presented a question of fact for the jury which it has impliedly resolved against appellant.

As to whether Bohen in any other respect drove without due regard for the safety of persons using the highway, including Cavagnaro, and whether he arbitrarily exercised the privileges declared in section 454, his own testimony shows that he saw Cavagnaro standing in the crosswalk just before he came into the intersection, but that he then looked away—"glanced to see where the fire was"—and did not see him again until he was within 2 feet of him. He testified:

"Q. The first time that you looked at him, about how many feet away were you from him? A. Well, I was making a swing and I saw somebody standing in the street.

"Q. Then you stated, I believe, that you directed your attention elsewhere? A. That is right."

The testimony shows that Cavagnaro was a man 6 feet in height, weighed some 284 pounds; that Bohen had known him practically all of his life and was quite intimate with him; and that as the fire truck approached Cavagnaro was waving one arm directing traffic, and motioning the approaching truck to the fire hydrant which was located near the southwest corner of the intersection. There is also evidence that another officer in plain clothes, who had arrived at the scene after Cavagnaro had taken up his position directing traffic, was standing near Cavagnaro, and only avoided being struck by making a hasty retreat, but that Cavagnaro, while he attempted to avoid the impact, was unable to do so. Bohen testified that he did not recognize Cavagnaro but the jury may well have disbelieved this statement. There is a conflict in the testimony as to where Cavagnaro was standing when struck, whether in the crosswalk or nearer the center of the intersection, and whether, in making the turn, the fire truck traveled as far east as the crosswalk, or turned nearer the center of the intersection. But the evidence is ample to support the contention of plaintiffs that Cavagnaro was actually standing in the crosswalk, and the jury may have so concluded.

In view of this testimony we think that the jury was not without some justification for concluding as it impliedly did, that Bohen did not give due warning, that he did not drive with due regard for the safety of decedent, and that he arbitrarily exercised the privileges declared by section 454, *supra*.

■ We think, also, that there was evidence justifying a conclusion that the fire truck was not equipped with adequate brakes. While the evidence is somewhat conflicting on this point, the trial court pointed out in its opinion that between the time the truck paused and the time it struck Cavagnaro it was traveling at a speed of only 5 miles per hour. It is conceded that it was being operated upon a dry asphalt or concrete surface where the grade did not exceed 1 per cent. Under the provisions of section 670 of the Vehicle Code, with adequate brakes, if traveling at a speed of 10 miles per hour or less, it should have been possible to bring the truck to a stop within 9.3 feet; but there is evidence that though Bohen had applied his brakes and was reducing his speed before he struck Cavagnaro, and was traveling at a speed of only 5 miles per hour or less, and that when about 2 feet from Cavagnaro he put on his brakes as hard as he could, the truck

progressed some 10 or 12 feet after the contact. There is also testimony that after the accident, when Bohen drove the engine up to a fire hydrant he drove it up onto the curb which was 5 or 6 inches high, before bringing it to a stop. While there is testimony on the part of Bohen which it is claimed negatives the foregoing evidence, he admitted that he had never tested the truck to determine whether its brakes were sufficient to comply with section 670, *supra*, and generally speaking, showed ignorance of the braking equipment on the machine. Also, a witness testified that after the accident Bohen said to him, ''You know you can't stop this damn thing very easy.'' Defendant produced no witness except Bohen to testify to the condition of the brakes, and the jury may well have concluded from the evidence before it that they were inadequate.

We cannot say, either, that Cavagnaro was guilty of contributory negligence as matter of law. As a deputy sheriff, one of whose duties it was to preserve public order and security (Gov. Code, § 1194; Pol. Code, § 4157), he was engaged in the direction of traffic at a place where an emergency existed by reason of the fire (Veh. Code, § 587.5). He was the first officer to appear and only one other officer appeared until after the fire trucks arrived. That officer stationed himself in a position to control traffic approaching the intersection from Soscol Avenue as well as that on Third Street. The trial court pointed out and numerous witnesses testified that traffic was heavy that day by reason of a parade held in connection with the county fair, and that the fire brought a throng of people to the intersection. Engaged as he was in the performance of a duty, and standing in the crosswalk, it cannot be said, as matter of law, that on observing the approach of the fire truck it was not reasonable for Cavagnaro to assume that it would proceed up Soscol Avenue to the scene of the fire or go to the fire hydrant located on the southwest corner of the intersection and toward which testimony shows decedent directed it. Also it cannot be said that decedent could not reasonably have believed that the truck, in turning as it did, would not swing into the crosswalk where he stood, or that the driver of the truck could not or would not observe and recognize him and direct his vehicle or stop it so as to avoid striking him. The evidence cannot be said to have been insufficient to support the implied finding of the jury that decedent was not guilty of contributory negligence.

It is said in *Pewitt* v. *Riley,* 27 Cal.2d 310, 316 [163 P.2d 873], quoting from *Anthony* v. *Hobbie,* 25 Cal.2d 814, 818 [155 P.2d 826], that contributory negligence is not established as a matter of law unless the only reasonable hypothesis is that such negligence exists, that reasonable or sensible men could have drawn that conclusion and none other, that where there are different inferences that may be drawn, one for and one against, the one against will be followed, and that before it can be held as matter of law that contributory negligence exists, the evidence must point unerringly to that conclusion.

On the motion for a new trial the court apparently gave careful consideration to the question of the sufficiency of the evidence, as in its opinion it pointed out testimony which it considered sufficient to sustain the verdict. As has often been stated by our courts, the trial judge is vested with a sound discretion to determine on such motion whether the verdict is supported by the evidence, and, on appeal, that discretion will not be interfered with in the absence of a clear and affirmative showing of a gross, manifest or unmistakable abuse of discretion. (20 Cal.Jur., § 13, pp. 27-28.) No such abuse of discretion appears here.

 Appellant next complains that testimony given by witness Jackson was erroneously admitted to its· prejudice. Jackson, a member of the fire department of the city of Calistoga, who had had 17 years' experience in repairing automobiles and trucks, and was familiar with the trucks used by his own fire department, one of which was the same as Bohen's truck, was called by plaintiffs in rebuttal as an expert witness, and permitted to testify regarding the distance within which a truck such as the one here involved could, under specified conditions, be stopped. Defendant's witness Bohen had testified in support of defendant's case that defendant's truck was equipped with a mechanism designated as a booster which helped to stop the truck "so that you do not have to press so hard." He also testified that his brakes were in good mechanical condition. Jackson's testimony was adduced apparently to contradict Bohen and to impeach him, and Jackson was permitted to give his expert opinion that if defendant's truck was so equipped and in such condition and traveling at the rate of speed shown by the testimony, it would have been possible to bring it to a stop sooner than was done. Defendant brought the truck out for inspection by the jury,

representing that it was in the same condition as at the time of the trial, and Jackson examined it. He testified he could find no booster on it. While the weight to be given Jackson's testimony might be subject to question, as probably was argued to the jury, we cannot say that its admission was erroneous under the pleadings and the testimony previously given in the case. It tended to show that the brakes of defendant's truck were not adequate to meet the statutory requirement, that had they been adequate Bohen could have stopped before striking decedent, and also to contradict Bohen's testimony that the vehicle was equipped with a booster.

As regards appellant's contentions that the court erred in the giving of certain instructions, it first sets forth five instructions as follows:

(1) "You are instructed, that because of the public necessity for the operation of authorized emergency vehicles in cases of an emergency and after giving audible signal, as required by law, upon the immediate approach of such vehicles, the operators of such vehicles are relieved from the general rules of the road applicable to other vehicles."

(2) "The necessity for a clear and speedy pathway for fire trucks lawfully responding to a fire alarm is recognized under the law and unless the driver has failed to drive with due regard for the safety of other persons using the highway or has arbitrarily made use of the privileges granted a fire truck under such circumstances there can be no legal responsibility to a person using the street who might come in contact with such vehicle."

(3) "You are instructed that where an authorized emergency vehicle is lawfully answering the emergency call and is giving the required warning, as required by law, an injured pedestrian is not entitled to redress in the courts, *unless the driver of the emergency vehicle has failed to drive with due regard for the safety of other persons lawfully using the highway or has arbitrarily made use of the privileges granted a fire truck under such circumstances as to amount to wilful misconduct and without due regard for the safety of others lawfully using the highway.*"

(4) "You are instructed that, while the law relieves the driver of a fire truck belonging to the City and which is being driven in response to a fire alarm and sounding its siren from certain regulations applying to other motor vehicles, the law does require the driver of said fire truck under said circum-

stances to drive with due regard for the safety of all persons using the highway."

(5) "If the driver of the fire truck intentionally drove the truck towards and into Henry P. Cavagnaro with the knowledge that it was likely to result in serious injury to him, or with a wanton and reckless disregard of its possible consequences, and if Henry P. Cavagnaro was injured by reason thereof, the driver may be said to have acted arbitrarily and without due regard to the rights of Henry P. Cavagnaro."

Appellant says that (1) and (2), which it proposed, are correct, but that the portion of (3) in italics, which was added by the trial court, is erroneous, as are instructions (4) and (5). We fail to see that there is any inconsistency between the language used in the two which appellant approves and those which it claims are erroneous, unless appellant means that the giving of a signal relieves the driver of an emergency vehicle from responsibility for driving without due regard for the safety of others using the highway or from an arbitrary exercise of his privileges. We are cited to no authority so holding, and section 454, *supra*, is to the contrary, and at appellant's request an instruction embodying that section was given to the jury. Appellant asserts that the instructions criticised are not justified under the evidence, but it was for the jury to decide whether Bohen gave the signal required by law, and whether, even if he did so, he drove his vehicle with due regard for the safety of others or arbitrarily exercised the privilege granted his truck as an emergency vehicle.

Appellant next attacks instructions given regarding the condition of the brakes on the fire engine, and the obligations of the city to maintain its brakes in conformity with section 670 of the Vehicle Code. With one exception, referred to below, it is not contended that the instructions given are erroneous in themselves, but that they should not have been given because "there was no evidence in the case upon which the jury could properly base a finding that the brakes on the fire engine violated the law." In giving these instructions the court recited that the condition of the brakes was an issue in the case as the complaint charged that the city was carelessly and negligently driving the truck with inadequate brakes. Under these circumstances it was proper for the court to advise the jury as to the law applicable to this issue.

And as we have already held that there was sufficient evidence to sustain a finding that the brakes were defective, we cannot say that there was no such evidence.

Appellant relies upon *Ketchum* v. *Pattee,* 37 Cal.App.2d 122 [98 P.2d 1051], but in that case there was no evidence presented showing or tending to show that the brakes on defendant's vehicle were defective or that defendant attempted to stop it to avoid the accident. On the contrary, the driver did not attempt to stop, but swerved his truck in an effort to avoid hitting the victim. The facts of the case are in nowise similar to those in the case before us.

Appellant also asserts that in giving two of its instructions regarding the effect of a violation by the city of section 670, *supra,* the court erred in failing to advise the jury that as stated in *Satterlee* v. *Orange Glenn School Dist.,* 29 Cal.2d 581, 589 [177 P.2d 279], "[a]n act which is performed in violation of an ordinance or statute is presumptively an act of negligence, but the presumption is not conclusive and may be rebutted by showing that the act was justifiable or excusable under the circumstances." Appellant fails to note, however, that the foregoing quotation is followed by the words "Until so rebutted it is conclusive." In the case before us it may be said in this connection, first, that appellant made no request for any such instruction, and second, that no evidence was presented by it in an attempt to show that any defect in its brakes was justifiable or excusable under the circumstances. It stood upon the testimony of Bohen alone that the brakes were in good condition. Therefore, no question of excuse or justification for a defective condition of the brakes was made an issue for the jury to decide. And in the Satterlee case it is stated with cited authority (p. 588) that unless and until justification or excuse for violation of a statute appears, the general rule applies and it must be treated as negligence *per se.*

Error is also predicated upon certain instructions on contributory negligence and assumption of risk. It cannot be denied that the court gave all of the instructions requested by defendant upon these subjects. But, though the jurors were told that at the time of the accident Cavagnaro was a mere volunteer in attempting to direct the movements of the fire engine, that he assumed the risks thereof and that he was bound to yield the right of way to the fire engine, it urges that the effect of the instructions given was to tell the jury

that they "could excuse the decedent from the doctrines of contributory negligence and assumption of risk, if he was trying to protect his brother's property which was on fire, or if he was a courtesy, honorary, or uncompensated deputy sheriff or if he had once been a county officer." This conclusion is predicated upon the giving of the following instructions:

(15) "In deciding whether Henry P. Cavagnaro was guilty of contributory negligence, you may consider the reason, if any, why he took a position in the street directing traffic, if you find that he did so, his experience in such work, if he had any prior experience, and all the other facts and circumstances shown by the evidence."

(21) "A man may take risks to protect the property of himself or others from destruction provided he uses such care as an ordinarily careful man would use under the same circumstances. The amount of risk he may take and the precautions he should use depend on the facts and circumstances of the case and are to be determined by the jury."

(25) "If Henry P. Cavagnaro was a duly appointed and qualified deputy sheriff of the County of Napa, he had all the rights and duties of the sheriff throughout the County of Napa and including the area of the City of Napa therein."

Firstly, we do not think that the aforesaid instructions justify the conclusion drawn by appellant; and secondly, in the light of the instructions requested by defendant and given by the court on the subject of contributory negligence and assumption of risk, which are too numerous to be set forth herein, there being 14 or 15 of them, even if the said instructions were subject to criticism, which we do not decide, in view of article VI, section 4½, of the Constitution we are of the opinion that no miscarriage of justice resulted therefrom.

It is said in 24 California Jurisprudence, pages 857-861: "It has been often stated that a trial court is not required to state all of the law applicable to a case in a single instruction. The charge must be read as a whole, that is to say, the instructions given should be considered in connection with each other, and if, without straining any portion of the language, the charge harmonizes as a whole and fairly and accurately states the law, a reversal may not be had because of verbal inaccuracies, because isolated sentences and phrases are open to just criticism, or because a separate instruction does not contain all of the conditions and limitations which are to be gathered from the entire charge."

Also see *Westover* v. *City of Los Angeles,* 20 Cal.2d 635, 637 [128 P.2d 350], and cases there cited.

We believe that the jury were fully and fairly advised as to the law applicable to the case; and because some of the instructions do not accord with defendant's theories, or with that portion of the evidence which is most favorable to defendant, it does not follow that such instructions are erroneous. Appellant does not contend that the court failed to give any instructions requested by it. Furthermore, the record shows that before instructing the jury the trial court requested counsel for all parties to confer with him and voice any objections they might have to the instructions which had been prepared, but that defendant's counsel failed to comply with such request. And while it does not follow that counsel's failure in this behalf would cure fatally defective instructions, it should debar such counsel from thereafter criticizing minor defects.

The judgment is affirmed.

Peek, J., and Thompson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 26, 1948.