[Civ. No. 19846. Second Dist., Div. Three. Jan. 25, 1954.]

DONNA ELLEN CHASTAIN, a Minor, etc. et al., Respondents, v. CHARLES G. ROOK, Appellant.

CHARLES G. ROOK, Appellant, v. BARNEY DAVIS et al., Defendants; ELLEN LOUISE CHASTAIN et al., Respondents.

Lynch & Reilly and Charles H. Lynch for Appellant.

Walter W. Heil for Respondents Chastains.

Morris Lavine and Thomas H. Greenwald for Respondent Reynolds.

VALLÉE, J.—Appeal by defendant Rook from an adverse judgment entered on verdicts of a jury in actions for damages for personal injuries.

Rook commenced an action in the municipal court against Ellen Louise Chastain for damages for personal injuries and to property. Ellen Louise filed a cross-complaint in that action for damages in a sum in excess of the jurisdiction of the municipal court. That action was then transferred to the superior court. Donna Ellen Chastain, a minor, then filed an action against Rook in the superior court for damages for personal injuries. The two actions were consolidated for trial. Later, Donna caused one Reynolds to be served. Reynolds filed a cross-complaint against Rook and Ellen Louise. The jury's verdicts were for Donna, Ellen Louise, and Reynolds against Rook. One judgment was entered in the two actions. Rook appeals.

The grounds for reversal are that the evidence is insufficient to support the verdict and that the damages awarded Ellen Louise are excessive. Neither ground is sustainable.

The action arose out of an intersection collision between an ambulance driven by Rook, an automobile driven by Ellen Louise, and a small delivery truck driven by Reynolds. The

accident occurred in the intersection of Eastern Avenue and Olympic Boulevard in Los Angeles. Eastern runs north and south; Olympic, east and west. Traffic at the intersection was controlled by red and green signal lights.

Rook operated a private ambulance service. He maintained an office on Olympic Boulevard three blocks east of Eastern. About 2:30 p. m. on February 5, 1951, he received a call for an ambulance and was told it was an emergency. He left in the ambulance, driving west on Olympic. The ambulance was equipped with a siren and with a red lamp on its front top. Atmospheric conditions were normal. Ellen Louise was driving a Plymouth south on Eastern; Donna was riding with her. Reynolds was driving a Chevrolet truck east on Olympic.

Westbound cars were stopped at the intersection of Eastern and Olympic because of a red signal light. Rook approached the intersection on or near the double center line of Olympic, at a speed between 40 and 50 miles an hour. He did not begin to sound his siren until he was about four or five automobile lengths east of the intersection.

Ellen Louise entered the intersection with a green light, travelling between 15 and 20 miles an hour. At that time she neither heard nor saw the ambulance. The ambulance was right on her when she first heard the siren. Reynolds had stopped on Olympic Boulevard at the intersection in the second lane of traffic from the double line, facing east, waiting for the light for east-west traffic to change from red to green. He testified he saw Ellen Louise enter the intersection and that at that time there was no audible siren. As Rook entered the intersection the ambulance collided with the car of Ellen Louise and her car was knocked into Reynolds' truck. The accident happened about a second or two after Rook first sounded the siren on the ambulance. The ambulance left 24 feet of solid four-wheel skid marks easterly from the point of impact. The red lamp on the ambulance did not flash prior to the accident.

Section 44 of the Vehicle Code provides: "An 'authorized emergency vehicle' is a vehicle of any of the following types:

. . . . . . . . . . .

"(e) When used in responding to emergency calls, any privately owned ambulance, specially constructed and maintained exclusively for ambulance purposes, authorized by permit issued by the Chief of the California Highway Patrol, and any publicly owned ambulance."

Section 554, so far as applicable, provides: "Upon the immediate approach of an authorized emergency vehicle giving audible signal by siren and having at least one lighted lamp exhibiting red light visible under normal atmospheric conditions from a distance of 500 feet to the front of such vehicle:

"(1) The driver of every other vehicle shall yield the right of way and shall immediately drive to a position parallel to, and as close as possible to, the right-hand edge or curb of the highway clear of any intersection and thereupon stop and remain in such position until such authorized emergency vehicle has passed, except when otherwise directed by a police or traffic officer."

Section 454 reads: "The driver of an authorized emergency vehicle shall be exempt from those provisions of this code herein set forth under the following conditions:

"(a) Said exemption shall apply whenever any said vehicle is being driven in response to an emergency call or when used in the immediate pursuit of an actual or suspected violator of the law, or when responding to but not upon returning from a fire alarm.

"(b) Said exemptions shall apply only when the driver of said vehicle sounds a siren as may be reasonably necessary and the vehicle displays a lighted red lamp visible from the front as a warning to others. Under the circumstances hereinabove stated, any said driver shall not be required to observe those regulations contained in Chapter 3 or in Chapters 6 to and including Chapter 13 of Division 9 of this code, but said exemptions shall not relieve the driver of any said vehicle from the duty to drive with due regard for the safety of all persons using the highway, nor shall the provisions of this section protect any such driver from the consequences of an arbitrary exercise of the privileges declared in this section." Included in these chapters are regulations as to speed and right of way.

The evidence and the reasonable inferences therefrom, which we have stated in the light most favorable to respondent, disregarding conflicting evidence and inferences, amply support the implied findings of the jury. The parties appear to agree that Rook was on an emergency call. There was evidence from which the jury could have concluded that the ambulance did not give an audible signal by siren as was reasonably necessary, and did not display a lighted lamp visible from the front. The exemption provided by section

454 did not apply. Ellen Louise, having the green light to proceed across Olympic, was not, therefore, required to yield the right of way. Further, the jury reasonably could have concluded that Rook did not drive with due regard for the safety of other persons using the highway, and that he arbitrarily exercised the privilege given him by section 454. (*Reed* v. *Simpson*, 32 Cal.2d 444, 449-452 [196 P.2d 895]; *Cavagnaro* v. *City of Napa*, 86 Cal.App.2d 517, 520-523 [195 P.2d 25].)

 Ellen Louise was awarded $5,468. Appellant claims it is excessive. She was knocked unconscious. As a result of the accident, she developed pneumonia in a portion of one lung, and a collapse of a portion of that lung behind the pneumonia process in the right upper lobe. She was in a hospital about two weeks with an atalectasis (caving in of the lung). She was in a coma part of this time. On leaving the hospital she was compelled to remain in bed most of the time for two weeks. She had diathermy and heat treatments. Numerous X-rays were taken. At the time of trial she had frequent headaches, pain in her left side, numbness in her hand, and was extremely nervous. Her doctor and hospital bills were $553. She was employed. Her loss of earnings was about $1,386. At the present value of the dollar, the verdict was about $3,000. It is obvious the damages awarded Ellen Louise are not excessive.

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.