[Civ. No. 16494. First Dist., Div. One. Nov. 28, 1955.]

WILLIAM H. MILLER, Respondent, v. FRED JENSEN et al., Appellants.

Keith, Creede & Sedgwick and Scott Conley for Appellants.

Lewis, Field & DeGoff for Respondent.

BRAY, J.—In a personal injury action, the jury returned a verdict for plaintiff of $18,000. From the judgment entered thereon defendants appeal.

### QUESTION PRESENTED

The sole question presented is whether the trial court should have instructed that violation of Vehicle Code sections 540 and 544 (which it read to the jury) was not necessarily negligence if (a) excused by the circumstances, or (b) if excused by the situation set forth in section 525, subdivision (3).

### EVIDENCE

Defendant Detels was driving a heavy dump truck loaded with 6 tons of asphalt belonging to defendant Jensen easterly along Belvedere Drive in Marin County towards its intersection with Reed Boulevard. That intersection is unusual in shape. By reason of the curving corners the intersection is larger than the ordinary one where two streets cross. Defendant Jensen was doing some road surfacing on the west half of Reed south of the intersection. In order to make the

asphalt topping to be applied later, stick, it was necessary to sweep the street clean of gravel so that the "black coat" could be applied. From one to three days prior to the accident the west half of Reed through to the northwest corner of the intersection had been swept. Thus the westerly half of the intersection had been swept. The evidence fails to disclose whether it was to be oiled. Presumably it was at least as far as the middle of the intersection. It is not clear whether the westerly half of Reed had been oiled (received its adhesive "black coat.") Presumably it had because the paving (with asphalt) had started 400 to 500 feet south of the intersection and was progressing towards it. At no time had the paving on Reed approached within 60 feet of the intersection. There was roadmaking equipment around the intersection. Jensen's foreman first testified that there was a roller on the southwest corner. Later he testified to a roller being with other equipment in the northwest corner of the intersection off the highway, the roller being on Belvedere. There was a sign on Belvedere, "Danger, men and equipment working," 300 or 400 feet from Reed, and apparently one at the southwest corner of the intersection. There were present an 800 gallon oil tank and one or two barricades (just where they were located does not appear). About 60 feet down on Reed was an asphalt spreader. This was a sort of box into which the asphalt was poured and which did the actual spreading of it. Detels testified that he intended to drive along Belvedere to the gravelled area at the southeastern corner of the Reed intersection, wait there until the spreader was ready, after which he would have driven the truck south into and down the east side of Reed and then swung westerly in an arc so as to bring him north of the spreader box which was on the west side of Reed, and then he would back his truck into the box and dump the load. (Thus, he had no intention of making a right hand turn into Reed, but intended to cross over to the opposite side of Reed before turning right out of Belvedere into the easterly side of Reed.) Traveling along Belvedere at 15 to 20 miles per hour, his right wheels when he was about 20 feet from the intersection were about 4 feet from the right edge of Belvedere. Although looking as he did in the right hand mirror he could see back about 100 feet, and in the left hand mirror he could see a considerable distance back, he could not see a vehicle directly back of the truck and within 75 feet of it, because of the great width of the truck. Just as he entered

the intersection he gave a signal for a right turn. Detels looked in the mirrors on three different occasions as he crossed the intersection and did not see anything. He veered about 2 feet to the left and going about 5 to 7 miles per hour he started to make a right turn. Then through his window he saw plaintiff, applied his brakes, stopped immediately and was standing still. Plaintiff's car then traveled about 6 feet. The truck's front right bumper and the front of the left rear fender of plaintiff's car collided. At that time the truck's right front wheels were in the gravel area.

Plaintiff's version of the accident was that proceeding about 20 to 25 miles per hour he was following the truck at first about 200 to 250 feet behind it. The truck was moving at a slower speed. When the truck was approximately 200 feet from the intersection it moved out toward the center of the road. Plaintiff was then about 150 feet behind the truck. Belvedere there turns slightly to the right. The truck continued in a straight line, thereby bringing it nearer the center of the road. The truck seemed to be about to make a left turn. The right side of Belvedere was clear to plaintiff's right (down Reed) and he saw no traffic there. He then looked forward and saw that the truck had apparently changed direction and was coming to the right. Plaintiff slammed on his brakes and turned the steering wheel to the right. His car skidded forward on the loose gravel about 10 feet. Plaintiff then took his foot off the brake, stepped on the gas, turned the wheel to the left in an endeavor to avoid the accident by getting across the intersection ahead of the truck. He was probably going about 20 to 25 miles per hour when the vehicles collided. When he struck the gravel the car moved sideways out of control. Plaintiff saw no signal given by the truck.

Both plaintiff and Detels drew on the map the line each claimed the truck traveled through the intersection up to the point of impact. Detels' line indicates a very narrow arc to the left, while plaintiff's line indicates a much wider one. The investigating police officer placed the point of impact as indicated by the debris at a point which corroborates plaintiff's line and indicates that the truck when struck was not yet entering the easterly side of Reed, as claimed by Detels.

One Redmon, an employee of defendant Jensen, who was at the spreader box, saw the truck coming on Belvedere. He traced the truck's course generally about the same as did Detels, except that near the center of the intersection he drew

a slightly wider arc to the left than did Detels. It appeared to him the truck was stopped when hit. When the witness first saw plaintiff's car it was coming about 40 to 45 miles per hour on Belvedere. It reduced its speed about the center of the intersection and was going about 10 to 15 miles per hour at the time of collision. It did not skid. It stopped quickly. (The police officer testified to skid marks of 20 feet.)

Summing up the testimony, and taking defendant's evidence at its most favorable, including the reasonable inferences therefrom,* it is clear that Detels did not keep to the right side of Belvedere, but swung to the left and was making a right turn into the far side of Reed when the accident occurred. While there is some confusion as to whether there was a roller at the southwest corner of the intersection, such roller, if it were there, in nowise caused Detels to fail to turn into the west or near side of Reed. The only reason given by Detels for his disregard of the requirements of the Vehicle Code was, in effect, that it was more convenient for him later to reach the spreader. He at no time testified that he followed the route he did because the repairs, the equipment or any physical condition of the streets made it necessary for him to do so.

### INSTRUCTIONS

The court read to the jury section 540, a right turn at an intersection must be made as close as practicable from the right side or edge of the highway and a left turn from the right portion of the highway nearest the center; section 525, vehicles must be driven upon the right half of the highway; section 525.1, any vehicle proceeding at less than normal traffic speed shall be driven as close as practicable to the right hand edge; section 544, no turn shall be made from a direct course until the move can be made with reasonable safety and after appropriate signal given continuously for the last 50 feet.

The court then instructed that a violation of each or any of these sections would constitute negligence as a matter of law. Defendants contend the court erred (a) in not reading the second portion of section 525, Vehicle Code, and (b) in not stating that such violation would not constitute negligence

---

*This we are required to do in determining whether the court erred in failing to give instructions favorable to defendants. The rule, of course, is just the contrary in determining whether the evidence supports the verdict. Here there is no contention that it does not.

256

*per se* if the violation was excusable or justifiable. They contend the instructions should have been so qualified.

The law relating to the effect of violations of the Vehicle Code is well defined in *Satterlee* v. *Orange Glenn School Dist.*, 29 Cal.2d 581 [177 P.2d 279]—an act or failure to act below the statutory standard is negligence *per se* and is negligence as a matter of law. Circumstances of emergency or unusual conditions may be shown to excuse the violation. Unless and until justification or excuse for violation appears, the general rule applies and it must be treated as negligence *per se.* (P. 588.) ". . . the fact which will excuse the violation of a statute has been defined by the court as one resulting 'from causes or things beyond the control of the person charged with the violation.' " (P. 589.) In the application of the rule each violation must be considered in connection with the surrounding circumstances.

Ordinarily the excuse presents a question of fact for the jury, but if the court is impelled to say that from the facts reasonable men can draw but one inference and that pointing unerringly to the negligence of the plaintiff contributing to his injury, it is then a matter solely for the court. (P. 590.)

(a) *Section 525, Vehicle Code.*

This section requires a vehicle to be driven on the right half of a roadway. The portion omitted is "except as follows: . . . (3) When the right half of a roadway is closed to traffic while under construction or repair." There was not the slightest evidence that any portion of either Belvedere or Reed which Detels intended to travel, or did travel, was closed to traffic. So there was no basis whatever for mentioning this exception.

*De Yo* v. *Umina*, 121 Cal.App.2d 505 [263 P.2d 623], is not in point. At that time section 525, Vehicle Code, read that vehicles must be driven upon the right half of the highway except when overtaking and passing another proceeding in the same direction. The trial court failed to read the exception. There was evidence through a presumption in the plaintiff's favor that at the time of the accident the plaintiff was overtaking and passing another vehicle, hence under the circumstances of the case the court in merely reading a portion of the section erroneously instructed the jury. Here there is no evidence to require the reading of the omitted portion.

(b) *Were the violations excusable?*

 We fail to find any evidence or reasonable inferences therefrom which would justify Detels' driving down Belvedere away from the normal position on the right side, in arcing to the left, and in attempting a turn into the far side of Reed. He himself makes no excuse for it other than convenience in later approaching the spreader. Certainly, convenience does not meet the requirement above stated that the violation of a statute must arise from causes or things beyond Detels' control. See *Kuehn* v. *Lowthian,* 124 Cal. App.2d 867 [269 P.2d 666], discussing and supporting the cases holding that the excuse must be based upon causes beyond the appellant's control. Defendants contend that the street work being done on Reed approaching the corner (still more than 60 feet therefrom) and equipment scattered around, justified Detels in his action. In the first place, Detels at no time according to his own testimony was actuated by any feeling of necessity to do what he did; he did it for convenience alone. Secondly, there is no evidence upon which such a necessity could have been based, no showing that anything at all prevented Detels from continuing on the right hand side of Belvedere and then making a right turn into the west side of Reed and proceeding southerly to the feeder box, all as the law required him to do. While it is true that Reed was under repair, such fact in itself would not justify violations of the statute. If reasonably necessary in order not to delay or impair the work going on, the jury could determine that such violations were justified. Here, practically the only claim of justification is based upon the fact that had the truck obeyed the law and gone down Reed on the right hand side it later would have had to maneuver across Reed in order to back up to the feeder box. Obviously this would be a matter of convenience only. As said in *Cavagnaro* v. *City of Napa,* 86 Cal.App.2d 517, 528 [195 P.2d 25]: ". . . in the Satterlee case it is stated with cited authority (p. 588) that unless and until justification or excuse for violation of a statute appears, the general rule applies and it must be treated as negligence *per se.*"

Defendants offered no qualifying instructions, contending that it was the duty of the court to give them of its own motion, citing *Ornales* v. *Wigger,* 35 Cal.2d 474, 478 [218 P.2d 531]; *Satterlee* v. *Orange Glenn School Dist., supra,* 29 Cal.2d 581, and *Gallup* v. *Sparks-Mundo Engineering Co.,* 43 Cal.2d 1 [271 P.2d 34]. These cases, however, do not so

hold. The Ornales case stated that the general rule is that before an appellant may complain of the lack of an instruction he must request that the charge be made more specific or ask for qualifying instructions, but that this rule is qualified by the rule that the appellant may complain, in the absence of such request, where the instruction erroneously states the applicable law and prejudice is suffered thereby. It then specifically held that the appellant could not complain of the failure of the trial court to give an instruction qualifying its instructions on the effect of the violation of a statute, for the reason that the appellant had offered no such qualifying instruction. In the Satterlee case it was held that the trial court was justified in refusing to give an instruction offered by the appellants to the effect that violation of section 550, Vehicle Code, would be negligence *per se* because it did not cover the issue as to whether the circumstances were such as to excuse violation, as the facts in the case would have warranted a finding that the violation was excused. In the Gallup case, it was held, likewise, that the trial court was justified in refusing an instruction offered by the appellants that violation of a certain statute was negligence *per se* and in giving instead an instruction to that effect but qualifying it if the violation could reasonably be excused. None of these cases considered whether it was the duty of the court to give a qualifying instruction of its own motion. In *Cavagnaro* v. *City of Napa, supra,* 86 Cal.App.2d 517, 528, one of the grounds given by the reviewing court, after considering the Satterlee case, *supra,* upon which defendants rely, in upholding the failure of the trial court to qualify an instruction upon the effect of the violation of a statute was that the appellant had made no request for such instruction. In *Mehling* v. *Zigman,* 116 Cal.App.2d 729, 735 [254 P.2d 141], after considering the Ornales case, *supra,* upon which defendants also rely, the reviewing court refused to hold erroneous an instruction given by the trial court that violation of section 502, Vehicle Code, was negligence *per se,* without qualification, pointing out that no qualifying instruction was offered by the appellants.

*Fuentes* v. *Panella,* 120 Cal.App.2d 175, holds (p. 183 [260 P.2d 853]): "But these cases do not stand for the proposition that excuse instructions can be given only where there is an admitted violation and the violator offers evidence of justification for such violation. The jury may believe that a violation of the law has taken place, and thus disbelieve the testimony to the contrary, but at the same time believe

that such violation, under all the circumstances, was justifiable because of the circumstances." However, that rule is of no comfort to defendants here because the circumstances of our case bring it within the other rule set forth (p. 183): "Of course, where there is no evidence at all of justification, or the surrounding circumstances do not show it, it is error to instruct on excuse."

The instructions given by the court here were not erroneous. They were correct as far as they went. If defendants desired to have them qualified they should have so informed the trial court. See *Kuehn* v. *Lowthian, supra,* 124 Cal.App.2d 867, 873, holding that since the appellants had not offered a proper instruction on the subject they could not complain that the excuse instruction there given did not contain the qualifications the appellants claimed it should have.

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied January 25, 1956.