[Civ. No. 14873.   First Dist., Div. One.   Apr. 1, 1952.]

PAULINE PEARL HART, as Administratrix, etc., Appellant, v. ABRAHAM L. BRISKMAN, Defendant; ROBERT H. WINTER et al., Respondents.

Frank B. Blum, William A. Lahanier and Guernsey Carson for Appellant.

Dana, Bledsoe & Smith and Morton B. Jackson for Respondents.

PETERS, P. J.—George D. Knight, now deceased, was injured in an accident. He brought an action against Abraham L. Briskman, the driver of the truck that collided with his car, and Robert H. Winter, the driver of another truck that was involved in the events immediately preceding the accident. The Pacific Truck Service Corporation, employer of Winter, was also joined as a defendant. The jury brought in a verdict of $40,000 against all defendants. They all moved, on all of the statutory grounds, for a new trial. The motion of Briskman was denied. The motions of Winter and Pacific Truck were granted on the sole ground of error in failing to give a proffered instruction. Knight has appealed from the order insofar as it granted a new trial to Winter and Pacific Truck. Subsequently, Knight died, and Pauline Hart, the

administratrix of his estate, has been substituted as the appellant.

■■ The law applicable to such an appeal is well settled. In *Scott* v. *Renz*, 67 Cal.App.2d 428, 432 [154 P.2d 738], it is summarized as follows:

"Of course, a new trial may be granted upon the ground that the jury was erroneously instructed upon matters of law. (Code Civ. Proc., § 657; *Mazzotta* v. *Los Angeles Ry. Corp.*, 25 Cal.2d 165, 170 [153 P.2d 338].) This court has recently set forth the rules applicable to such an appeal in *Conroy* v. *Perez*, 64 Cal.App.2d 217, 220 [148 P.2d 680], as follows: 'The rule governing reviewing courts on appeals of this kind may be stated as follows: "The granting or denial of a new trial is a matter resting so largely in the discretion of a trial court that it will not be disturbed except upon a manifest and unmistakable abuse. It is especially so when such discretion is used in awarding a new trial which does not finally dispose of the matter." (2 Cal.Jur. 905; *Pettigrew* v. *O'Donnell*, 32 Cal.App.2d 502 [90 P.2d 93].) And where the subject of erroneous instructions is involved, it is held that a wide discretion should be allowed to the trial court and that the order granting the new trial must not be disturbed unless there appears to be an abuse of discretion. [Citing three cases.]'

"The Supreme Court, in the case of *Mazzotta* v. *Los Angeles Ry. Corp.*, 25 Cal.2d 165, 169 [153 P.2d 338], had the following to say concerning the discretion conferred upon the trial courts in such cases: 'It is well settled that the granting of a motion for a new trial rests so completely within the discretion of the trial judge that an appellate court will not interfere with his action unless a manifest and unmistakable abuse of discretion clearly appears. [Citing 11 cases.]'" (See, also, *Brignoli* v. *Seaboard Transportation Co.*, 29 Cal. 2d 782 [178 P.2d 445]; *People ex rel. Dept. of Public Works* v. *McCullough*, 100 Cal.App.2d 101 [223 P.2d 37]; *Pezzoni* v. *City & County of San Francisco*, 101 Cal.App.2d 123 [225 P.2d 14]; *Ridenour* v. *Scarcella*, 107 Cal.App.2d 554 [237 P.2d 322].)

The basic facts are as follows: The accident happened between 7:30 and 8 a.m on December 18, 1947, on Highway 101 about a mile south of Petaluma. This is a level four-lane divided highway running north and south, the north and south bound lanes being divided by a 5-foot dividing strip

covered with diagonal concrete ribs. At the scene of the accident a dirt road comes into Highway 101 from the east, and on the northeast corner of the dirt road and 101 is a gasoline service station and café, catering to the trucking trade. Directly opposite where this dirt road comes into 101 there is an opening in the dividing strip to permit ingress and egress to and from the gasoline station.

At the time and place here involved there was a heavy wet fog. Between 7:30 and 8 a.m., Winter, in the course and scope of his employment with Pacific Truck, was driving an oil truck and trailer about 60 feet long, both empty, south on Highway 101, traveling about 30 miles per hour. His windshield wipers were working, his headlights were lit, and there were lighted clearance lights on each side of the equipment. Both windows of the cab of the truck were closed. The rearview mirror extending from the left side of the cab of the truck was filmed with fog, so that Winter could not see to the rear. The cab was also equipped with a state-approved reflector type arm signal which was controlled from inside the cab.

As Winter was proceeding south on 101 he decided to enter the service station, where his company had an account, to get gasoline for his truck. To get to the station, Winter had to make a left turn and thus cross the two northbound traffic lanes. Because his rearview mirror was filmed over so that he could not see to the rear, Winter pulled off the highway onto the shoulder to his right and brought his equipment to a full stop a short distance north of the gasoline station. He then opened the door of the cab to see if there were any vehicles approaching from the north. He observed none. He thereupon closed the cab door, put the vehicle into gear, and started to make his left turn. As he started up he noticed headlights in front of him approaching from the south. These were the headlights of the Briskman truck. Winter estimated that these headlights were 500 or 600 feet away when first observed by him. He then operated his arm signal to indicate a left turn, and proceeded to make the turn and to drive into the service station at a speed of 8 to 10 miles per hour. When the cab of the Winter truck was just entering onto the shoulder of the highway adjoining the service station, he noticed the approaching lights about 250 to 300 feet away. Winter could not estimate the speed of the approaching vehicle. He completed his turn into the service station and

brought his equipment to a stop without mishap. The equipment was then completely off the highway. He did not know that there had been an accident until one of the operators of the service station informed him of that fact.

While these events were taking place, Knight, the plaintiff, was also driving south on 101 some distance behind the truck and trailer, at a speed of 35 miles per hour. He was driving in the right lane of traffic. He had his headlights on and his windshield wipers operating. When about 150 feet north of the opening in the highway he saw Winter engaged in making the left-hand turn. The truck and trailer were then at approximately a right angle to the highway moving very slowly, and he could see the side lights on the equipment. Knight slowed down to 10 or 20 miles per hour and safely passed the equipment of Winter. At that moment the rear of the trailer still covered the inside southbound lane of traffic. Just as he passed the truck and trailer he observed headlights coming from the south.

Briskman was driving a flatbed truck loaded with empty chicken coops north on 101. He was in the outside lane for northbound traffic. He testified that he was going but 25 miles per hour as he approached the service station; that he first observed the truck-trailer when about 150 feet from it; that at that time it was still in the inside lane traveling south; that when he was about 125 feet away, the truck-trailer started to make a left turn, right in front of him; that he applied his brakes; that his truck started to skid and skidded across the northbound lanes, across the dividing strip, and over into the outside southbound lane, where it hit Knight's car, resulting in the injuries to Knight. Much of Briskman's testimony is contradicted by prior inconsistent statements, by other witnesses, and by the physical facts. There were skid marks on the highway showing that Briskman's truck skidded 184 feet before hitting Knight's car. Briskman is not a party to this appeal so that the evidence relating to his liability need not be further considered.

As already pointed out, the jury brought in a verdict against Briskman, Winter and Pacific Truck. All of the defendants moved for a new trial. The trial court denied Briskman's motion, and then entered its order granting the motions of Winter and Pacific Truck "on the sole grounds of error in law committed by the Court's failure to give either defendant, Robert H. Winter ['s], requested Instruction No. 6 or, in the alternative, B.A.J.I. Instruction No. 149."

■ Winter's proposed Instruction 6, referred to above, reads as follows:

"I instruct you that while it is generally and ordinarily true that the approach for a left-hand turn shall be made in that part of the right half of the roadway nearest to the center line thereof and that said turn shall thereafter be made so as to leave the intersection to the right of the center lane of the roadway being entered, that it is nevertheless true that under certain circumstances and conditions where a different course is required in the interests of reasonable safety and where a person, because of peculiar conditions, is required to act differently and where, in the exercise of ordinary and reasonable care, such person does act differently that under such circumstances it is not negligent to follow a course which in the interests of safety is required by the surrounding circumstances.

"In this case, therefore, if you find that certain conditions existed which in the exercise of ordinary care and for the purpose of reasonable safety required a different course of conduct on the part of defendant Winter, and you find that said defendant, in the exercise of such care, followed such course of conduct, then I instruct you that he was not guilty of any negligence in acting contrary to the provisions of the Code section. It is for you to determine from the surrounding circumstances all factual issues in this case and you must therefore resolve this question from a just and fair consideration of all the relevant and pertinent evidence relating thereto."

B.A.J.I. Instruction No. 149, referred to by the trial court, reads as follows: "Conduct which is in violation of . . . just read to you constitutes negligence per se. This means that if the evidence supports a finding, and you do find, that a person did so conduct himself, it requires a presumption that he [or] [she] was negligent. However, such presumption is not conclusive. It may be overcome by other evidence showing that under all the circumstances surrounding the event, the conduct in question was excusable, justifiable and such as might reasonably have been expected from a person of ordinary prudence. In this connection, you may assume that a person of ordinary prudence will reasonably endeavor to obey the law and will do so unless causes, not of his own intended making, induce him, without moral fault, to do otherwise." This instruction, where applicable, has been

held to contain a correct statement of law. · (*Combs* v. *Los Angeles Ry. Corp.*, 29 Cal.2d 606 [177 P.2d 293].)

Instead of giving either of these instructions, the trial court, at the request of Briskman, instructed that: "Section 540 of the Code provides that the driver of a vehicle intending to turn left at an intersection shall approach for such left turn in that portion of the right half of the roadway nearest the center line thereof and, after entering the intersection, the left turn shall be made so as to leave the intersection to the right of the center line of the roadway being entered. A violation, if any, of said sections is prima facie evidence of negligence on the part of one so violating such vehicle code.''

It is a conceded fact that Winter started his left turn from the west shoulder of the southbound lane. The question is whether there is evidence that would have warranted or required the trial court to give either one of the proposed qualifying instructions.

There can be no doubt that in a proper case, that is, where the evidence warrants it, such a qualifying instruction should be given. One of the leading cases on this subject is *Satterlee* v. *Orange Glenn School Dist.*, 29 Cal.2d 581 [177 P.2d 279], a case involving a collision between plaintiff's automobile and defendant's bus. The evidence showed that plaintiff had not complied with the Vehicle Code section relating to the right of way between cars approaching an intersection. Defendant requested an instruction to the effect that, if the jury should find that plaintiff violated this section, such negligence constituted negligence *per se,* and, if a proximate cause, barred plaintiff from recovery. The trial court refused these instructions, instructed generally on the rights of drivers of vehicles entering intersections at the same time, and added an instruction to the effect that under certain circumstances a person who has the right of way may be negligent. The Supreme Court found that although plaintiff entered the intersection in violation of the code section, the evidence would support a finding that, under the circumstances, he was excused or justified. The court then, after stating the rules applicable to the doctrine of negligence *per se,* stated (p. 588): "However, in an emergency, or under unusual conditions, it is generally held that circumstances may be shown to excuse the violation. The rule has been aptly stated in *Jolley* v. *Clemens,* 28 Cal.App.2d 55, 67 [82 P.2d 51], where it was said (quoting from 1 Shearman & Redfield on Negligence,

§ 13) : ' ". . . violation of such a statute or ordinance is presumptive evidence of negligence, which, if not excused by other evidence, including all the surrounding circumstances, should be deemed conclusive . . ." ' Continuing, the court said: 'But unless and until justification or excuse for such conduct appear . . . the general rule applies and it must be treated as negligence *per se.*' "

. Weather conditions and other circumstances beyond the control of the defendant may require the giving of the qualifying instruction. (*Ornales* v. *Wigger,* 35 Cal.2d 474 [218 P.2d 531] ; see, also, *Fietz* v. *Hubbard,* 59 Cal.App.2d 124 [138 P.2d 315] ; *Emery* v. *Los Angeles Ry. Corp.,* 61 Cal.App.2d 455 [143 P.2d 112].)

Thus, the real question is whether there was any evidence in the instant case that would have warranted the trial court in giving such a qualifying instruction. If so, under the rules already stated, the action of the trial court in granting a motion for a new trial for failure to give this instruction must be upheld.

The solution of this problem turns upon whether or not there is any evidence that would support a finding that Winter acted in a reasonable and prudent fashion in pulling off the road, looking back, and then making his left turn. Under section 544 of the Vehicle Code it is provided that no turn shall be made "unless and until such movement can be made with reasonable safety." Here, Winter was driving equipment about 60 feet in length. It was very foggy, and visibility was poor. The rearview mirror was filmed over with fog. Under these circumstances, and out of an abundance of caution, Winter pulled off to his right, stopped his equipment, opened the cab door and looked back to see if there were any approaching cars. Having ascertained that he could negotiate the left turn safely so far as southbound cars were concerned, he made his left turn. That he estimated this correctly is demonstrated by the fact that his equipment did not prevent Knight from safely passing the truck and trailer. Winter saw the northbound car approaching and believed that he had plenty of time to make the turn. If his testimony is believed, he did have such time if Briskman was approaching at a lawful speed. It is a possible and reasonable inference that Briskman was approaching much too fast, and that this was the proximate cause of the accident. Thus, whether

or not Winter acted as a reasonably prudent man in pulling off the highway before making his left turn was for the jury to determine.

Appellant argues that the reason given by Winter for pulling off the road was that his rearview mirror was filmed over, and contends that it would have been a simple matter for Winter to have reached out and wiped off the mirror. In this connection, appellant relies on the following language of the Satterlee case, *supra*, (p. 589) : "However, the fact which will excuse the violation of a statute has been defined by the court as one resulting 'from causes or things beyond the control of the person charged with the violation.' [Citing many cases.]" Appellant also relies on the rule that, where no justification for the violation of the statute appears, it is not error to refuse the qualifying instruction. (*Cavagnaro* v. *City of Napa*, 86 Cal.App.2d 517 [195 P.2d 25].) But if there is any conflict on this issue, if reasonable minds may differ on the question, the validity of the excuse offered presents a question of fact for the jury. The proper rule was stated as follows in the Satterlee case, *supra*, (p. 590) : "In the application of this rule each violation of a statutory requirement must be considered in connection with the surrounding circumstances. Ordinarily, the excuse relied upon by the violator presents a question of fact for the jury's determination. As stated in *Scalf* v. *Eicher, supra,* p. 54: 'Whether or not a violation of a statute or ordinance proximately contributed to an accident and whether the violation was excusable or justifiable are questions of fact except in a case where ". . . the court is impelled to say that from the facts reasonable men can draw but one inference and that an inference pointing unerringly to the negligence of the plaintiff contributing to his injury." ' [Citing many cases.]"

It is quite apparent that Winter was not responsible for the weather conditions then existing. He was required, under the law, to ascertain whether he could make a left turn safely. He could, perhaps, have slowed down, opened the cab window, and wiped off the rearview mirror. This might be a dangerous thing to do while the equipment was moving. He chose the other alternative—to drive off the highway and look back. Whether what he did under the circumstances was or was not reasonable, was a question of fact for the jury. Reasonable minds may differ on the matter. This being so, the trial court was justified in finding that it should have given the qualify-

ing instruction, and in granting the motion for a new trial for its failure to do so.

The order appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 29, 1952. Carter, J., was of the opinion that the petition should be granted.