[Civ. No. 15526.   First Dist., Div. One.   Sept. 11, 1953.]

MARGARET C. FUENTES et al., Appellants, v. BERNARD PANELLA et al., Respondents.

Harrett W. Mannina and Charles R. Wayland for Appellants.

Campbell, Hayes & Custer, Alfred B. Britton, Jr., and W. R. Dunn for Respondents.

PETERS, P. J.—Plaintiffs are husband and wife. The wife, Margaret C. Fuentes, was injured when the automobile she was driving collided with the truck-trailer operated by defendant Lawrence Gaffin and owned by defendant Frank Panella, doing business as the B. Panella Drayage Company. Plaintiffs brought this action to recover for Mrs. Fuentes' injuries. Judgment based on a jury verdict was entered for defendants. Plaintiffs appeal.

Defendants concede that at all times here pertinent Gaffin was acting in the course and scope of his employment with Panella. Plaintiffs do not attack the sufficiency of the evidence to sustain the judgment, their contentions being that certain instructions were erroneously given and others erroneously refused. The evidence must be reviewed, however, to understand the points in reference to the instructions.

The accident occurred at about 1 p. m. on the dry, clear day of August 17, 1950, at the level intersection of McKee Road which runs east and west, and Bayshore Highway, which runs north and south, in Santa Clara County. Mrs. Fuentes was driving a 1931 Model "A" Ford west on McKee Road on her way to her work. Gaffin was driving a three-piece tractor, a flat bed semitrailer and a flat bed full trailer, weighing 3 tons, and loaded with 19 tons of boxed pears, north on Bayshore Highway.

At the intersection in question there are three 10-foot lanes on Bayshore, the center lane being there divided by a double line, and with 10-foot shoulders bordering the lanes. McKee is about 40 feet wide. A limit line is painted across McKee at the intersection to indicate where cars should stop when required to do so before entering the intersection.

Each of the four corners of the intersection is guarded by projecting overhead signals, of the variety where the lights flash from green, to amber, to red. The signals are of the

"trip" type, that is, controlled automatically by the passing traffic. Green lights on McKee would automatically mean the lights on Bayshore were red, and vice versa. There was no testimony at all as to the duration of the signals, and particularly there was no evidence as to the length of the amber or caution light.

Mrs. Fuentes testified that as she approached within half a block of the intersection she noticed that the red light was against her. She brought her car to a stop at the limit line at the intersection, and waited quite a while for the light to turn green. James Hood, driving his cab east on McKee, testified that from the opposite side of the intersection he saw Mrs. Fuentes stop, as he had, for the red light. George Fereira, driving a pickup truck behind Mrs. Fuentes, also testified that Mrs. Fuentes stopped at the intersection, but was most confused as to the condition of the lights then or immediately thereafter. Mrs. Fuentes testified that when the McKee light turned green she started across the intersection, first looking to the right and then to her left, where she first observed defendants' truck approaching at about 35 miles an hour, and then about 50 feet from the intersection. She did not look at this truck again, because she assumed that it would stop because the lights were green for McKee Road traffic and therefore must have been red for Bayshore traffic.

Gaffin, by deposition, directly contradicted this testimony. He testified that when he was 40 feet from the intersection he observed the Fuentes' car on McKee also about 40 feet from the intersection, and approaching it at the same speed he was traveling, that is, 25 to 30 miles per hour; that he maintained this speed as he approached the intersection; that he first noticed the Bayshore traffic light while he was 150 feet from the intersection, and such light was then green; that there were no cars between his truck and the intersection; that the Bayshore light remained green as he entered the intersection.

Hood, the cab driver, estimated that the truck was going about 30 miles an hour and was about 75 to 100 feet from the intersection, or it could have been 50 feet, when the light turned green for McKee traffic, and when he and Mrs. Fuentes, from opposite sides of the intersection, started to cross.

Fereira was most confused as to who was where and what the conditions of the lights were at the critical times involved. He testified on direct and redirect that when he observed the truck 40 feet from the intersection it was traveling 35 miles

an hour, and that the light on McKee was green, but on cross-examination he stated that when the truck "got pretty near even with the shoulder of McKee Road," the light on McKee "said" green.

A similar conflict exists as to the position of the parties after they entered the intersection and at the time of the collision. Mrs. Fuentes testified that after she saw the truck 40 feet from the intersection she continued across slowly and did not again look at the truck because she assumed that it would stop. She next observed the truck just before the collision, at which time she had almost reached the dividing line of Bayshore. Although somewhat uncertain, she believed she was still moving when hit by the truck. From the physical facts and other evidence it appears that the tractor and semitrailer must have passed in front of her and that she hit or was hit by the side of the full trailer at about its rear wheels.

Hood testified that he from one side, and Mrs. Fuentes from the other, had proceeded into the intersection with the green light for McKee traffic about 10 or 12 feet when the truck entered the intersection. He then first realized that the truck was not going to stop, stopped himself, and observed the truck speed up and swing out in an attempt to miss the Ford. He could not see the actual collision, but heard it, and, while Mrs. Fuentes was moving when last seen by him, he thought the Ford was stopped when hit.

Fereira also agreed that Mrs. Fuentes, in accordance with the green light, was 10 feet out into the intersection when the truck entered it. Although this witness had given a statement after the accident to the effect that Mrs. Fuentes had "rolled" into the side of the truck, he insisted at the trial that she was stopped when hit.

Gaffin, however, testified that the light was green for Bayshore traffic when he entered the intersection at 15 to 20 miles per hour. Although he had observed the Fuentes' car while it was 40 feet from the intersection, he did not see it again until after the accident. He did not know whether Mrs. Fuentes had or had not stopped at the intersection. He did not apply his brakes or blow his horn. He felt the impact of the collision when his equipment was in the intersection, applied his brakes, crossed Bayshore to his left side, and parked.

The left front and rear of the Ford were badly damaged.

The full trailer had a slightly split supporting beam on its right side over the back wheels.

On this evidence the jury brought in an eleven-to-one verdict in favor of defendants. Plaintiffs' major contention, made in various ways, is that since Gaffin testified that he was proceeding in accordance with the green light on Bayshore, and Mrs. Fuentes testified that she was proceeding with the green light on McKee, and neither admitted, claimed or contended that they had violated the law or should be excused from such violation, it was error of a most prejudicial nature to have instructed that circumstances could excuse a departure from the standard of care set forth in the Vehicle Code in reference to traffic signals.

At the request of plaintiffs the trial court instructed, in the words of section 475 of the Vehicle Code, that the driver of any vehicle shall obey the instructions of any official traffic signal applicable to him and placed as provided by law.

Plaintiffs object to the following three instructions. The first of these, given at the request of defendants, is as follows:

"I instruct you that Section 476 of the Vehicle Code of the State of California, insofar as it is applicable to this case reads as follows:

" 'Official Traffic Signals. Whenever traffic is controlled by official traffic control signals exhibiting different colored lights successively, one at a time, . . . said lights shall indicate and apply to drivers of vehicles and pedestrians as follows:

" ' (A) Green alone or "Go."

" '1. Vehicular traffic facing the signal shall proceed straight through or may turn right or left or make a semicircular or U turn unless a sign at such place prohibits any such turn. But vehicular traffic . . . shall yield the right of way to other vehicles . . . lawfully within the intersection . . . at the time such signal is exhibited.

" ' (B) Yellow or "Caution" when shown following the green or "Go" signals.

" '1. Vehicular traffic facing the signal is thereby warned that the red or stop signal will be exhibited immediately thereafter and vehicular traffic shall not enter the intersection when the red or stop signal is exhibited.

" ' (C) Red alone or "Stop."

" '1. Vehicular traffic facing the signal shall stop before entering . . . the intersection and shall remain standing until green or "Go" is shown alone, . . .

" ' (F) No person shall disobey the directions of this section except when it is necessary for the purpose of avoiding a collision or in case of other emergency. . . .' "

The " (F) " portion of this instruction was not given when the instruction was first read to the jury, but when the jury requested that certain instructions be reread this instruction was reread and " (F) " added. Plaintiffs object to the giving of " (F)."

The court, of its own motion, then gave the following instruction:

"The mere fact that a vehicle enters or crosses such an intersection against a stop signal is not conclusive proof of negligence. This is because the controlling device may change to give the stop sign either just as a vehicle is entering the intersection or when it is so close that an attempt to stop suddenly would be futile, or would be more hazardous than crossing the intersection, or would be more liable to result in interference with other traffic. The fact that the law recognizes these possibilities, however, does not justify a driver in approaching an intersection at a careless rate of speed. He, too, is bound to know that the signal, being automatic, will not heed his approach and that it may change before he reaches the intersection. The ordinarily careful driver will adjust his speed to that possibility. Failure to obey a traffic signal may or may not be the proximate result of a negligent speed in approach.

"When there is a question whether a driver was negligent in entering an intersection against an automatic stop signal, all the surrounding circumstances should be considered with a view to judging whether his conduct was justifiable, excusable and in the manner of an ordinarily prudent person.

"In giving you this instruction, I do not mean to imply, nor to suggest, that any party, involved in the accident in question, did enter the intersection that is under our consideration against a stop signal, or that any party made a negligent approach to the intersection. Whether or not either of those things was done is a question of fact that you must decide."

This instruction, too, was reread to the jury at its request.

The last major instruction in this series to which objection is taken reads as follows:

"Conduct which is in violation of any of the statutes read to you constitutes negligence per se. This means that if the evidence supports a finding, and you do find, that a person did

so conduct himself, it requires a presumption that he was negligent.

"However, such presumption is not conclusive. It may be overcome by other evidence showing that under all the circumstances surrounding the event, the conduct in question was excusable, justifiable and such as might reasonably have been expected from a person of ordinary prudence."

The record, as originally filed, did not show who requested this instruction, but at the oral argument it was stipulated that the record should be augmented to show that this instruction was given at the request of plaintiffs. As offered by them it had two other short paragraphs which were deleted by the trial court. One of the deleted paragraphs related to proximate cause, a subject covered elsewhere in the instructions, and the other was a restatement of paragraph one of the instruction as given.

It will be noted that paragraph two of the last quoted instruction tells the jury that, although the presumption of negligence arises out of a violation of the ordinance, such presumption may be overcome "by other evidence showing that under all the circumstances surrounding the event, the conduct in question was excusable." Thus, plaintiffs themselves presented, and the court gave, a so-called excuse instruction. Thus, even if it were error to have instructed on excuse, in view of the denial of any violation and in the absence of direct evidence from either side on such issue, plaintiffs would be in no position to complain. It is well settled law that where a litigant invites error by offering instructions on a certain issue, he is in no legal position to complain that it was error to give instructions offered by the adversary, or given by the court on its own motion, on the same issue. The doctrine of invited error applies to such a situation. (*Wells* v. *Lloyd*, 21 Cal.2d 452 [132 P.2d 471] ; *Blythe* v. *City & County of San Francisco*, 83 Cal. App.2d 125 [188 P.2d 40] ; *Connor* v. *Pacific Greyhound Lines,* 104 Cal.App.2d 746 [232 P.2d 500] ; see cases collected 4 Cal. Jur.2d p. 422, § 557.)

We do not mean to imply that, under the facts, it was error to have instructed on the issue of excuse. It is obvious that the signal light was red, amber or green when Gaffin entered the intersection. When Mrs. Fuentes entered the intersection the McKee Road light was either red or green. Both testified that the lights were green for them. Both could not be correct. Someone was mistaken. There was

no evidence at all of the duration of any of the lights, and particularly no evidence as to how long the amber or caution light remained lit. Gaffin had a legal right to enter the intersection if the Bayshore light was either green or amber. From all of the surrounding circumstances, including the conflict as to who was where when the lights changed, it is a reasonable inference from the evidence that just as Gaffin arrived at the intersection, the Bayshore light flashed amber momentarily and then flashed red. If he entered the intersection just as the Bayshore light flashed red, he might have entered the intersection in apparent violation of section 476 of the Vehicle Code. But such apparent violation might, under all the surrounding circumstances, have been excusable.

■ Of course, where there is no evidence at all of justification, or the surrounding circumstances do not show it, it is error to instruct on excuse. (*Cavagnaro* v. *City of Napa,* 86 Cal.App.2d 517 [195 P.2d 25] ; *Carlson* v. *Shewalter,* 110 Cal. App.2d 655 [243 P.2d 549] ; *Harris* v. *Joffe,* 28 Cal.2d 418 [170 P.2d 454].) ■ But these cases do not stand for the proposition that excuse instructions can be given only where there is an admitted violation and the violator offers evidence of justification for such violation. The jury may believe that a violation of the law has taken place, and thus disbelieve the testimony to the contrary, but at the same time believe that such violation, under all the circumstances, was justifiable because of the circumstances. ■ Whether the circumstances were sufficient to constitute justification is a fact question. ■ The jury should be instructed on the issue whether such justification appears from direct evidence of an admitted violation plus evidence of excuse, or appears from all the surrounding circumstances. (*Combs* v. *Los Angeles Ry. Corp.,* 29 Cal.2d 606 [177 P.2d 293] ; *Satterlee* v. *Orange Glenn School Dist.,* 29 Cal.2d 581 [177 P.2d 279].) The evidence need not show an actual emergency. (*Hart* v. *Briskman,* 110 Cal.App.2d 194 [242 P.2d 341].)

■ In the instant case, in view of the conflict as to the condition of the lights when Gaffin entered the intersection, one of plaintiffs' witnesses, Fereira, placing the truck at the intersection just when the McKee light turned green, and in view of the unknown duration of the amber light, and of all the surrounding circumstances, it must be held that the instructions on justification were properly given. This also disposes of plaintiffs' contention that certain instructions

offered by them and contrary to the excuse instructions should have been given.

█ Plaintiffs next complain that even if the excuse instructions were properly given, they should have been qualified by an instruction to the effect that such excuse could exist only where the circumstances showing excuse were beyond the control of Gaffin, citing *Ornales* v. *Wigger*, 35 Cal.2d 474 [218 P.2d 531]. This qualification to the excuse doctrine, first suggested on this appeal, is much too broad. (*Hart* v. *Briskman*, 110 Cal.App.2d 194 [242 P.2d 341].) Although the Ornales case did hold (p. 479) that excuse instructions should be qualified ''by an instruction on the type of evidence necessary to rebut the presumption of negligence,'' its actual holding directly refutes plaintiffs' present contention because it held that the failure to give the qualifying instruction was not prejudicial where the appellants (as in the instant case) had not themselves offered such qualifying instruction, and had joined in the request (as in the instant case) for excuse instructions. (See, also, *Mehling* v. *Zigman*, 116 Cal.App.2d 729 [254 P.2d 141]; *Florine* v. *Market St. Ry. Co.*, 64 Cal.App.2d 581 [149 P.2d 41], on the necessity of offering qualifying instructions; see, also, *Viera* v. *Gordon*, 113 Cal.App.2d 700 [248 P.2d 981].)

Plaintiffs next object to two instructions that were given to the effect that both drivers had to use ordinary care in exercising their right-of-way which they could not negligently presume was clear, and claim that two instructions submitted by them to the effect that Mrs. Fuentes was entitled to assume that Gaffin would obey the signals should have been given. *Taylor* v. *Sims*, 72 Cal.App.2d 60 [164 P.2d 17], and *Lee* v. *Stephens*, 8 Cal.App.2d 650 [47 P.2d 1105], are cited in support of these contentions. While both of those cases did state that a driver crossing with a signal has no duty to maintain a lookout, they were not ruling upon instructions at all. They used that language in rejecting a contention that plaintiff was there shown to be guilty of contributory negligence as a matter of law. █ In the instant case the evidence was directly conflicting, and presented fact questions, as to who was entitled to the right-of-way. The instructions offered by plaintiffs sought erroneously to limit the benefit of the rule to Mrs. Fuentes alone and to exclude Gaffin from its benefits, and were, for that reason, erroneous. █ Moreover, the instructions offered by plaintiffs and rejected by the trial court should be

given only where it can be ruled as a matter of law that plaintiff was free of contributory negligence, because before one can rely on the due care of others he must be in the exercise of due care himself. (*Ribble* v. *Cook,* 111 Cal.App.2d 903 [245 P.2d 593]; *Carlson* v. *Shewalter,* 110 Cal.App.2d 655 [243 P.2d 549].) These cases, and the case of *Freeman* v. *Churchill,* 30 Cal.2d 453 [183 P.2d 4], upheld instructions similar to those given here where the question, as in the instant case, as to who had the right-of-way, was a fact question. (See, also, *Satterlee* v. *Orange Glenn School Dist.,* 29 Cal.2d 581 [177 P.2d 279].)

■ Inasmuch as the jury was properly instructed, as already held, on the doctrine of excuse from statutory negligence, it was quite proper to instruct that each of the drivers had to use due care to maintain a lookout. Moreover, such instructions are obviously proper where the evidence is conflicting as to who is the violator.

None of the other claimed errors requires comment.

The judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.