271 P.2d 34]

[L. A. No. 23070. In Bank. June 7, 1954.]

RUTH ROBBINS GALLUP et al., Respondents, v. SPARKS-MUNDO ENGINEERING COMPANY (a Corporation) et al., Defendants; C. O. SPARKS, INC. (a Corporation) et al., Appellants.

[L. A. No. 23071. In Bank. June 7, 1954.]

L. B. BROWN, Respondent, v. C. O. SPARKS, INC. (a Corporation) et al., Appellants.

(1)

4

Parker, Stanbury, Reese & McGee and Wm. C. Wetherbee for Appellants.

Russell H. Pray, William C. Price, Samuel P. Block, Flaum & Hecker and Henry F. Walker for Respondents.

BRAY, J. pro tem.*—These two actions, which have been consolidated for trial and appeal, arise from a collision between a truck driven by one of the defendants and an ambulance driven by decedent, who died as a result of injuries sustained in the accident. In one action, Mrs. Gallup, the mother of decedent, seeks recovery for his death, and, in the other, L. B. Brown, the owner of the ambulance, undertakes to recover damages for harm done to that vehicle. Defendants in both actions are the driver of the truck, two corporations which employed him, and another corporation which owned the truck. The jury returned verdicts for plaintiffs against all defendants, and judgments were entered accordingly.

*Assigned by Chairman of Judicial Council.

Defendants on this appeal do not claim that the evidence is insufficient to show that the driver of the truck was negligent but assert that the trial court erred in instructing the jury and in ruling upon the admissibility of evidence.

The collision occurred in Los Angeles about 10 p. m. on January 17, 1951, in clear weather at the intersection of Atlantic Boulevard, which is a northeast-southwest arterial, and Washington Boulevard, which runs east and west. Both boulevards were marked for four lanes of traffic, two in each direction. The intersection was well lighted and was controlled by tri-light traffic signals which showed green, amber and red lights. On the night of the accident the traffic signals were operating normally, and the amber lights were adjusted to shine for a period of three to four seconds before the red lights appeared. The ambulance was proceeding in a northerly direction along Atlantic, and the truck, loaded with 17 tons of sand, was going west on Washington. Two other vehicles on Washington were halted waiting for the stop signal to change. The truck, after passing to the right of these vehicles and entering the intersection, struck the right front door of the ambulance, and the ambulance was propelled sideways for a distance of about 35 feet.

There is a conflict as to whether the ambulance went against a stop signal. According to the testimony most favorable to plaintiffs, the ambulance, with two sirens sounding and three red warning lights flashing, entered the intersection as the traffic light changed from green to amber. There is evidence, however, that it entered the intersection when the signal was red.

The first question is whether decedent was privileged to proceed against red traffic lights on the trip involved here. A driver of an ambulance of the type driven by decedent is permitted to ignore traffic signals if a siren is sounded, a red warning light is shown, and the vehicle is driven in response to an emergency call, provided the driver exercises due care and does not use the privilege arbitrarily. (Veh. Code, §§ 44, subd. (e), 454.) Whether a vehicle is driven in response to an emergency call depends on the nature of the call received and the situation as presented to the mind of the driver and not upon whether there is an emergency in fact. (*Coltman* v. *City of Beverly Hills,* 40 Cal.App.2d 570, 572 [105 P.2d 153] ; *Head* v. *Wilson,* 36 Cal.App.2d 244, 252 [97 P.2d 509].) The driver, of course, should have reasonable grounds to believe that there is an emergency.

■ There is evidence in the present case which will support a finding that decedent reasonably believed he was responding to an emergency call. At the time of the accident the ambulance was responding to a telephone message received by decedent on behalf of his employer, who operated an ambulance service. The call was made by an employee of the Samaritan Institute in Los Angeles, an institution which treated alcoholics and which had been doing business with the ambulance service for several years. The manager of the ambulance company had instructed decedent that all calls from the institute, unless containing contrary directions, should be treated as emergencies and that restraint straps and a three-man crew should be taken in response to such calls. No contrary directions were given in the call placed on the night of the accident. Restraint straps were taken on the trip, and the ambulance crew was made up of two attendants and decedent, who was ''top man'' of his crew. There is testimony that a three-man crew and restraint straps were taken in ambulances operated by this company whenever a patient was potentially violent, that some alcoholics are violent, and that a potentially violent patient would be considered an emergency case. Before going on the call decedent prepared, in duplicate, a ''trip ticket'' which was a memorandum relating to the nature of the trip about to be taken. The original of this writing was placed in the ambulance where it was found after the collision, and the carbon copy was transcribed into the ''log book'' or permanent record of the company by one of its employees on the night of the accident. The manager of the ambulance company identified the ''trip ticket'' and the corresponding page of the ''log book,'' told how they were prepared, and testified that they were made out in the regular course of business. Among the notations appearing on these documents was the letter ''E'' which the manager identified as the customary designation of an emergency call.

Defendants assert that certain undisputed evidence shows that, as a matter of law, decedent was not responding to an emergency call, and they argue that the trial court therefore erred in refusing a requested instruction to this effect and in giving instructions which permitted the jury to find that he was acting in response to such a call. The facts relied upon are that the Samaritan Institute was devoted exclusively to the treatment of alcoholics, that the employee of the institute who placed the call stated only that there was

a "pick-up" at an address in Pomona and said nothing as to the condition of the patient or as to whether the case should be treated as an emergency, and that it was 20 miles from the place of business of the ambulance service to the address in Pomona and 30 miles from that address to the institute. It is defendants' position that the character of the institute requires an inference that the patient was merely an alcoholic, and that this, considered together with the facts that the language of the call did not indicate the existence of an emergency and that a trip of 50 miles was necessary to deliver the patient, shows that decedent reasonably could not have believed that an emergency existed. In our opinion, however, these matters only present a conflict with the other evidence and do not compel the conclusion urged by defendants.

We do not agree with defendants' contention that the "trip ticket" and corresponding page of the "log book" were improperly admitted in evidence. Section 1953f of the Code of Civil Procedure, which is part of the Uniform Business Records as Evidence Act, provides, "A record of an act, condition or event, shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission." In the present case, as we have seen, the challenged documents were prepared in the regular course of business on the night of the accident, and the manager of the ambulance company identified them and told how such records were made. Defendants nevertheless claim that the "trip ticket" and page of the "log book" do not come within the statute because the letter "E" appearing on them, used by the company to designate an emergency call, assertedly represents a conclusion which the entrant would not have been permitted to give as a witness at the trial. However, decedent made the entry on the "trip ticket," which was copied into the "log book," and he, of course, could have testified at the trial as to whether he believed that an emergency call had been received. The fact that the notation was self-serving, in a sense, does not make it inadmissible. Most business records are necessarily so. That the record was self-serving does not make it inadmissible. (See *Davis* v. *Fanny Briggs Carr, Inc.*,

105 Cal.App. 777, 779 [288 P. 710].) This fact was one for the jury to consider in weighing its effect. The notation was no stronger than the decedent's testimony as to his belief would have been. It was then for the jury to determine from all the evidence whether such relief was reasonable. For discussion of the application of the Uniform Business Records as Evidence Act, see *People* v. *Gorgol*, 122 Cal.App.2d 281, 294 [265 P.2d 69]; *Doyle* v. *Chief Oil Co.*, 64 Cal.App.2d 284 [148 P.2d 915].

■ The fact that the records were kept and introduced in evidence by a party relying upon them does not, of course, make section 1953f inapplicable. (See *Robinson* v. *Puls*, 28 Cal.2d 664, 668-669 [171 P.2d 430].)

■ The testimony to the effect that restraint straps and a three-man crew were taken in an ambulance whenever an emergency was involved was also properly admitted. This testimony, considered together with the evidence that such straps and a three-man crew were used on the particular trip involved here, permits an inference that decedent, who was in charge of the crew, believed that there was an emergency and bears upon the reasonableness of that belief.

■ It is claimed that the trial court erred in rejecting offers to prove that Pomona was an established municipality of from thirty to forty thousand population and that various emergency ambulance facilities were available there. The offered evidence, however, was irrelevant and properly excluded. The only issue to which it could be pertinent was whether decedent reasonably believed that he was responding to an emergency call, but there was no attempt to show that decedent knew the offered facts or knew whether the ambulance facilities in Pomona were available at the time of the call.

The trial court refused an instruction requested by defendants which, after setting forth portions of section 476 of the Vehicle Code relating to official traffic signals, stated that violation of these provisions constituted negligence as a matter of law. Instead, the court gave all the portions of section 476 requested by defendants plus other pertinent portions, particularly subdivision (f)* and then instructed to the effect that only a rebuttable presumption of negligence

---

*Subdivision (f) reads: "No person shall disobey the directions of this section except when it is necessary for the purpose of avoiding a collision or *in case of other emergency* or when otherwise directed by a police or traffic officer, or as permitted under Section 454." (Emphasis added.)

arose from any violation of section 476. ▮ It is settled that disobedience of a statute for which criminal sanctions are imposed is not negligence as a matter of law under all circumstances but that a presumption of negligence arises which can be rebutted by evidence of justification or excuse. (*Tossman* v. *Newman*, 37 Cal.2d 522, 525 [233 P.2d 1]; *Satterlee* v. *Orange Glenn School Dist.*, 29 Cal.2d 581, 588-590 [177 P.2d 279]; *Combs* v. *Los Angeles Ry. Corp.*, 29 Cal. 2d 606, 609 [177 P.2d 293]; *Fuentes* v. *Panella*, 120 Cal.App. 2d 175 [260 P.2d 853].) ▮ In the present case, as we have seen, there is evidence from which it could be inferred that decedent was privileged under section 454 of the Vehicle Code to ignore traffic signals, and the requested instruction would have precluded consideration of this evidence. It follows that the court acted properly in refusing this instruction and in treating justification as a question of fact. As said in *Satterlee* v. *Orange Glenn School Dist., supra,* 29 Cal.2d 581, 591, this instruction "invaded the province of the trier of fact by not tendering for consideration the issue as to whether the circumstances were such as to excuse violation." By correct instructions given, the court left the question of fact of violation to the jury.

▮ One instruction given by the court permitted recovery by plaintiffs even though the jury concluded that decedent failed to stop at a red signal and was not responding to an emergency call. This instruction stated that entering an intersection against a stop signal is not conclusive of negligence, and it then explained, "This is so because the controlling device may change to give the stop sign either just as a vehicle is entering the intersection or when it is so close that an attempt to stop would be futile, or would be more hazardous than crossing the intersection, or would be more liable to result in interference with other traffic. The fact that the law recognizes these possibilities, however, does not justify a driver in approaching an intersection at a careless rate of speed. He, too, is bound to know that the signal, being automatic, will not heed his approach and that it may change before he reaches the intersection. The ordinarily careful driver will adjust his speed to that possibility. Failure to obey a traffic signal may or may not be the proximate result of a negligent speed on approach. When there is a question whether a driver was negligent in entering an intersection against an automatic stop signal, all the surrounding circumstances should be considered with a view to judging whether

his conduct was justifiable, excusable and in the manner of an ordinarily prudent person. . . . '' There is no claim that the record does not contain evidence of the type of justification referred to in the instruction, but defendants assert that the instruction is not proper in any case where an amber signal warns that a red stop signal is about to appear. The fact that an amber warning is given, however, does not mean that there can never be justification for entering an intersection against a red light, and the instruction merely recognizes some of the circumstances which might justify such conduct. (See *Fuentes* v. *Panella,* 120 Cal.App.2d 175, 182-183 [260 P.2d 853] ; Veh. Code, § 476, subd. (f).)

■ The final question relates to whether medical expenses are recoverable in an action for death brought by an heir. The parties stipulated that the costs of medical care given to decedent prior to his death were $639.25 and that this amount was reasonable for the services rendered, but defendants reserved the objection that such expenses were not properly allowable in a wrongful death action. In this connection the trial court instructed that, if the jury found in favor of decedent's mother, she was entitled to recover the reasonable value of the medical care in an amount not to exceed the expenses, if any, incurred by her. On the issue of the right under death statutes of an heir to recover for medical expenses incurred between the injury and the death of the deceased, there is, as said in *Hansen* v. *Hayes,* 175 Ore. 358 [154 P.2d 202, 216], a ''clean-cut conflict of authority.'' (See that case for discussion of that conflict.) In California there is some confusion on the subject. Prior to its amendment in 1949, section 377 of the Code of Civil Procedure provided that in an action for the wrongful death of an adult brought by his heirs or personal representatives ''such damages may be given as under all the circumstances of the case, may be just.'' Under the section as it then read, the courts recognized that medical expenses could not be recovered in a wrongful death action because they were incurred merely in an endeavor to save life prior to death and not as a result of death.· (See *Salmon* v. *Rathjens,* 152 Cal. 290, 301 [92 P. 733] ; *Nitta* v. *Haslam,* 138 Cal.App. 736, 746 [33 P.2d 678] ; *Fitzgerald* v. *Quinn,* 131 Cal.App. 457, 461 [21 P.2d 656].) The case of *Cleary* v. *City R. R. Co.,* 76 Cal. 240, 241 [18 P. 269], contains language indicating that such expenses were recoverable by the heirs in an action for death, but this language conflicts with views expressed .in the cases cited above and

in any event must be disregarded in an action under section 377 as it now reads.

In 1949 section 377, Code of Civil Procedure, was amended to provide, among other matters not pertinent here, that the damages recoverable in an action under that section "shall not include damages recoverable under section 956, Civil Code." That section, added the same year, provides that when a person entitled to maintain an action for physical injury resulting from a wrong dies before judgment, the damages recoverable for such injury "shall be limited to loss of earnings and expenses sustained or incurred as a result of the injury by the deceased prior to his death. . . ." Thus a reading of the two sections together shows that the heir in a death action cannot recover expenses sustained or incurred by the deceased as a result of the injury. It has been so held in *Follansbee* v. *Benzenberg,* 122 Cal.App.2d 466 [265 P.2d 183]. It might be noted that the court in that case, although denying the personal representative in the suit brought under section 377, Code of Civil Procedure, a recovery for medical expenses, did allow the widow, individually, such recovery independently of that section based upon the statutory liability of the wife for her husband's medical expenses. It referred, by analogy, to the common law right of action of the parent of a minor child to recover medical expenses in an action for the negligent death of that child, based upon the liability of the parent for those expenses.

It should be pointed out here that if there is any common law right of a mother of an adult child (irrespective of section 377 which prohibits recovery), to recover medical expenses, plaintiff has failed to bring herself within that right for the reason that the record fails to show that she either incurred liability for or paid them. No evidence upon this subject was introduced at the trial. The parties stipulated, subject to defendants' objection that they were not recoverable, that $639.25 was incurred (by whom is not stated) for medical expenses and was the reasonable value thereof. In all actions under the common law theory, it was necessary to prove that the plaintiff had incurred and paid such expenses. See *Salmon* v. *Rathjens, supra,* 152 Cal. 290, 301, where in an action by children, one adult, the other minor, for the wrongful death of their father, the court said: ". . . certainly plaintiffs cannot recover for such charges [medical expenses] where they have never been paid by them and

plaintiffs are in no way liable therefor and have incurred no loss on account thereof.'' Not only was there no evidence that plaintiff either incurred or paid the medical expenses, but in her brief plaintiff claims that the expenses were paid by the employer of deceased and that such employer may under sections 3856 and 3857 of the Labor Code be awarded reimbursement from plaintiff's judgment therefor. There is nothing in the record to show that the employer paid these expenses. Moreover, one case has questioned whether an employer has a lien for medical expenses against a judgment obtained in a wrongful death action. (See *Fitzgerald* v. *Quinn, supra,* 131 Cal.App. 457, 461.) ▮ In any event, it is obvious that if the plaintiff in a death action cannot recover these expenses, the employer of the deceased who is not even a party to the action cannot do so in that action. Accordingly, the trial court erred in permitting the jury to include an award for such expenses, and, unless decedent's mother consents to a reduction of the judgment in her favor by the agreed sum of $639.25, a reversal will be necessary, since it is impossible to determine whether the verdict awarding her $13,153.71 contained an allowance for the medical expenses, or, if so, in what amount. If a new trial is to be held, however, it should be limited to the issue of damages. There is no merit to defendants' claim that the entire judgment must be reversed on the theory that the error prejudiced the jury by calling attention to decedent's pain and suffering. No evidence concerning his pain and suffering was introduced, and the jury was instructed that those factors could not be considered in determining the amount of damages.

The judgment in favor of plaintiff L. B. Brown is affirmed. Mrs. Gallup having filed written consent to the reduction of the judgment, the judgment in her favor is reduced to $12,514.46 and as reduced is affirmed. Plaintiffs are awarded costs on appeal.

Shenk, Acting C. J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.