[Civ. No. 16216.   First Dist., Div. One.   Mar. 17, 1955.]

ALEX SLOBODEN, Respondent, v. TIME OIL COMPANY
(a Corporation), Appellant.

558

Frederick M. Van Sicklen and James C. Calkins for Appellant.

Hoberg & Finger and Russell F. King for Respondent.

PETERS, P. J.—In this action for personal injuries the jury returned its verdict in favor of defendant, Time Oil Company. Plaintiff's motion for a new trial was granted "on the grounds that erroneous instructions were given at the time of the trial." Defendant appeals.

It is conceded that the trial court gave, upon the request of defendant, a partially erroneous instruction on the doctrine of assumption of risk. ██ Appellant argues its appeal as if the issue were whether the giving of this erroneous instruction was prejudicial, and assumes that the burden is on respondent to show that it was. That is not the law. Quite to the contrary, the burden is upon appellant to show that such erroneous instruction could not possibly have misled or confused the jury. ██ The proper rule, supported by many cases, is stated as follows in 4 Cal.Jur.2d page 476, section 598:

"The granting or denial of a new trial is a matter resting so largely in the discretion of a trial court that it will not be disturbed except upon a manifest and unmistakable abuse.

This is especially so when the discretion is used in awarding a new trial, for this action does not finally dispose of the matter, and it is only in rare instances and on very strong grounds that the reviewing court will set aside such an order. . . .

". . . But so long as a reasonable or even fairly debatable justification under the law is shown for the action taken, that action will not be set aside, even if, as a question of first impression, the appellate court might feel inclined to take a different view."

In *Bolton* v. *Martin,* 126 Cal.App.2d 178 [271 P.2d 991], in discussing an appeal from an order granting a new trial because of an erroneous instruction, this court stated (p. 180):

"Thus, on this appeal, the action of the trial court in granting the motion for a new trial because of the giving of the challenged instruction can be reversed only if, assuming the facts warranted instructions on last clear chance at all, the questioned instruction was absolutely accurate and under no reasonable interpretation could possibly have misled or confused the jury. All presumptions favor the order as against the verdict. It is not necessary to find, in order to uphold the trial court, that the giving of the instruction was prejudicial to the plaintiffs. If the challenged instruction was erroneous in any degree, or even if it is only 'fairly debatable' that such instruction may have been misleading, the broad discretion of the trial court may not be disturbed, even if this court, had the question been presented to it in the first instance, would have found the error minor, and would not have granted the motion. Thus, the burden on the one attacking such an order is a very heavy burden indeed." (See also *Conroy* v. *Perez,* 64 Cal.App.2d 217 [148 P.2d 680]; *Scott* v. *Renz,* 67 Cal.App.2d 428 [154 P.2d 738]; *Mazzotta* v. *Los Angeles Ry. Corp.,* 25 Cal.2d 165 [153 P.2d 338]; *Pettigrew* v. *O'Donnell,* 32 Cal.App.2d 502 [90 P.2d 93].)

Tested by these standards, it is obvious from the facts that it is at least "fairly debatable" whether the erroneous instruction "may have been misleading." That being so, the order must be affirmed.

Alex Sloboden, the plaintiff and respondent, in March of 1952, when injured, was employed as a welder by the Richmond Tank Car Company.* He had worked for that com-

---

*Hereafter generally referred to as Richmond Co.

pany for 2 years, and was a welder of 10 years' experience. The Time Oil Company, the appellant, owned some automotive equipment, including gasoline tank trailers, that occasionally needed welding repair. Appellant, in 1949, approached the Richmond Co. to do this work. Richmond Co. gave appellant an estimate on such repairs, which estimate required Richmond Co. to degas the tanks before welding. This is necessary as a preliminary safety precaution before welding. Tank trailers are degassed by steaming them for 7 or 8 hours. Appellant had just purchased a steam cleaning machine to be used for this purpose. Accordingly, the superintendent of appellant requested a welding estimate without Richmond Co. performing the steam cleaning of the equipment. Such an estimate was given. It was agreed between the appellant and Richmond Co. that appellant would steam clean all tank trailers to be repaired so as to make them gas free before delivering them to Richmond Co. The oral contract provided that appellant would be billed only for the welding, and the employees of appellant were instructed "to be certain to gas free this equipment and deliver them ready for welding to Richmond Tank Car Company." Appellant, prior to this time, had paid out large sums to have its equipment steam cleaned, and had purchased the steam cleaning machine to save itself that expense.

At the time this agreement was entered into nothing was said about any tests to be made by either of the contracting parties to determine whether the tanks were gas free. As a matter of fact, appellant had no equipment to make such a test. The Richmond Co. did possess a gas indicator, which is a rod about a yard long which is inserted into the tank, and a reading obtained from a battery-operated instrument indicating the degree of concentration of explosive vapors. This 3-foot wand could not effectively reach all portions of the tank's interior. A specified employee of Richmond Co. was delegated the duty of testing all tanks undergoing welding repair for gas, and no welding was performed by the welders until given a clearance by this employee.

Pursuant to the 1949 agreement, appellant sent 10 or 12 tank trailers to Richmond Co. for welding, always steam cleaning the trailers before sending them to Richmond Co. On the morning of March 19, 1952, appellant's shop foreman wanted a particular tank trailer repaired. He assigned two employees to steam clean the tank so that when it was delivered to Richmond Co. it would be ready for welding. These employees testified that they steam cleaned the various com-

partments in the tank for a period of seven or eight hours. Although the shop foreman of appellant knew that after steam cleaning it was a good safety measure to allow the equipment to ventilate for some time, in this instance, immediately upon the conclusion of the steam cleaning operation, he ordered the equipment delivered to Richmond Co. Appellant's shop foreman accompanied the equipment, and, upon arrival at the Richmond Co. plant, told the foreman of the latter company, apparently in the hearing of respondent, that the equipment had been "steam cleaned good."

The gas testing employee of Richmond Co. tested the tank for gas, and found the portions tested gas free. As already stated, the testing equipment was unable to reach all portions of the compartments of the tank. Respondent, who knew that he was not supposed to weld until given a clearance by the testing employee, asked that employee if he could proceed to weld and was told that he could. On this particular job, welding was required on cracks near the plugs on the top of the tank leading to the front and rear compartments. Respondent climbed up on the tank with his equipment and welded the cracks in the first compartment without incident. He then started to weld the cracks in the second compartment when an explosion occurred because of the explosive vapors still in the tank. Respondent was hurled to the ground and suffered severe injuries.

Respondent's complaint charged appellant with negligence in inspecting and delivering the tank trailer containing volatile gases to Richmond Co., and in not giving notice of its condition. Appellant denied this allegation and affirmatively pleaded the defenses of contributory negligence and assumption of risk. The jury found for appellant. The motion of respondent for a new trial was granted, the order specifying that the jury had been erroneously instructed.

The following instruction on the doctrine of assumption of risk, at the request of appellant, was given by the trial court:

"There is a legal principle commonly referred to by the term 'assumption of risk,' which now will be explained to you:

"One is said to assume a risk when he freely, voluntarily and knowingly manifests his assent to dangerous conduct or to the creation or maintenance of a dangerous condition, and voluntarily exposes himself to that danger, or when he knows, or in the exercise of ordinary care would know, that a danger exists in either the conduct or condition of another, or in

the condition, use or operation of property, and voluntarily places himself, or remains, within the area of danger.

"One who has thus assumed a risk is not entitled to recover for damage caused him without intention and which resulted from the dangerous condition or conduct to which he thus exposed himself."

Insofar as the instruction informed the jury that the doctrine of assumption of risk applies when the plaintiff "in the exercise of ordinary care would know, that a danger exists" the instruction is clearly and admittedly erroneous.

It is now settled law that a plaintiff does not assume the risk unless he has actual knowledge of the danger. (*Prescott* v. *Ralphs Grocery Co.*, 42 Cal.2d 158 [265 P.2d 904]; *Hayes* v. *Richfield Oil Corp.*, 38 Cal.2d 375 [240 P.2d 580]; *Plotts* v. *Albert*, 120 Cal.App.2d 105 [260 P.2d 621].) In the Prescott and Plotts cases judgments for defendants were reversed because of the giving of such instructions, while in the Hayes case a judgment for plaintiff was affirmed, the court holding, among other things, that an instruction proposed by defendant on assumption of risk was properly denied because it included the language here involved.

Appellant concedes that the instruction here given was erroneous, but contends that, under the facts, respondent assumed the risks here involved in that the evidence is uncontradicted that he had actual knowledge of the danger involved. This argument is largely based on the evidence that respondent knew that appellant had not tested the tanks and relied on the test made by his own fellow employee. Appellant also calls attention to an instruction given to the jury to the effect that "plaintiff did not assume the risk of any injury that could have come to him only through the negligence of the defendant"; and contends that this instruction cancelled out the erroneous one.

However relevant these arguments might be, had the trial court denied the motion for a new trial, they have no relevance to this appeal from the order granting the motion for a new trial. The trial court determined that its erroneous instruction may have misled or confused the jury. The correctness of that conclusion is at least "fairly debatable" and therefore within the discretion of the trial court. (*Fennessey* v. *Pacific Gas & Elec. Co.*, 10 Cal.2d 538 [76 P.2d 104]; *Nance* v. *Fresno City Lines, Inc.*, 44 Cal. App.2d 868 [113 P.2d 244]; *Hart* v. *Briskman*, 110 Cal. App.2d 194 [242 P.2d 341].) The fact the court later gave another instruction conflicting with the erroneous instruction

supports the granting of the new trial, because it indicates that not only was an erroneous instruction given, but that conflicting ones were given.

■ The argument that, under the facts, respondent assumed the risk as a matter of law is not sound. Under the evidence the jury could find that respondent relied, and had a right to rely, on appellant to furnish properly cleaned tanks, and had no actual knowledge of the danger resulting from possible negligence of appellant. This was a jury question. (*Meloy* v. *Texas Co.,* 121 Cal.App.2d 691 [263 P.2d 897].)

■ Respondent also argues that, independently of the erroneous instruction, the trial court committed error in refusing to give certain instructions proffered by him. Although his failure was not given as a basis for the granting of the motion, in such a situation the appellate court is not limited to the grounds specified by the trial court,· but may affirm the order if any proper ground for granting it appears in the record. (See cases collected 4 Cal.Jur.2d p. 393, § 539.) ■ Moreover, inasmuch as the order granting the new trial must be affirmed because of the giving of the erroneous instruction, this court should pass on the propriety of the proffered instructions for the benefit of the trial court on the retrial. (Code Civ. Proc., § 53; *Cake* v. *City of Los Angeles,* 164 Cal. 705 [130 P. 723].)

Respondent submitted a series of instructions, which were refused by the trial court, to the effect that any negligence of the Richmond Co. or its employees was at most, as a matter of law, a concurring cause and not an intervening one. These instructions were largely predicated on the rules of law set forth in the Restatement of Torts, section 393, and Comment (a) to that section, and the case of *Northwestern Nat. Ins. Co.* v. *Rogers etc. Foundry,* 73 Cal.App.2d 442 [166 P.2d 401].) ■ Under these rules, under certail circumstances, the liability of the supplier of a chattel who supplies it in a defective condition is not affected by the subsequent negligence of a third person who is under a duty to make an inspection. However, these rules have no application if Richmond Co. had as much or more knowledge of the dangers as did appellant. Under the facts it would have been improper to have instructed that the assumed negligence of Richmond Co. was, as a matter of law, either a concurrent cause or an intervening one. ■ It is for the jury to decide this question because it is a fact question. (*Mosley*

v. *Arden Farms Co.*, 26 Cal.2d 213 [157 P.2d 372, 158 A.L.R. 872] ; *Stockwell* v. *Board of Trustees*, 64 Cal.App.2d 197 [148 P.2d 405] ; *Gibson* v. *Garcia*, 96 Cal.App.2d 681 [216 P.2d 119].) The court gave a general instruction to this effect. It properly refused any instruction directly or indirectly stating that the question was one of law.

Respondent also contends that the trial court erroneuosly failed to give two instructions setting forth his basic theory of the case. The two instructions are substantially similar in legal effect. One of them reads as follows:

"If you find from the evidence that the defendant Time Oil Company, a corporation, undertook to prepare the gasoline tank for welding by plaintiff's employers, then a duty of reasonable care devolved upon them to make such tank safe for the purpose for which it was supplied; and

"If the defendant Time Oil Company, a corporation, failed to exercise reasonable care to make such tank safe for welding, then . it would become liable to the plaintiff for all damage or injury proximately caused thereby, provided plaintiff was free from contributory negligence."

The instructions correctly set forth the law applicable to a supplier's liability to those who use a chattel supplied for the supplier's business purposes. The duty of such a supplier is to use reasonable care to make the chattel safe for use. Under the facts of this case the jury could find that appellant agreed to furnish the tanks cleaned and prepared for welding, and could find negligence in failing to adequately clean the tank prior to delivering it to Richmond Co. for welding. In *Hinds* v. *Wheadon*, 19 Cal.2d 458 [121 P.2d 724], in a somewhat similar situation, the court laid down the duty of a supplier of such a chattel as follows (p. 461) : "The evidence indicates further that defendants undertook to prepare the dehydrator tank for the welding operation and, in that event, a duty of reasonable care devolved upon them to make the tank safe for the purpose for which it was supplied. [Citing a case and the Restatement of Torts, § 392.]" (See also *McCall* v. *Pacific Mail S. S. Co.*, 123 Cal. 42 [55 P. 706].)

No comparable instruction was given by the court. The proffered instructions, or similar ones, should have been given, and should be given on the new trial. This is an additional reason for affirming the order.

The order granting the new trial is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.