[Civ. No. 26200. First Dist., Div. Four. Aug. 31, 1970.]

HELEN PATTERSON, Plaintiff and Appellant, v.
HARVEY SHARP, Defendant and Respondent;
FIREMAN'S FUND INSURANCE COMPANY,
Intervener and Appellant.

---

## COUNSEL

Boccardo, Blum, Lull, Niland, Teerlink & Bell and Edward J. Niland for Plaintiff and Appellant.

Kiernan & Misciagna and E. P. Kiernan for Intervener and Appellant.

Wines, Coffee, Robinson & Nelson, Wines, Coffee & Robinson and Burton K. Wines for Defendant and Respondent.

---

## OPINION

**RATTIGAN, J.**—Following the entry of judgment upon a jury verdict in this wrongful death action, the trial court entered a second judgment purporting to adjust the rights and obligations of plaintiff, of defendant (a third party tortfeasor), and of the decedent's employer's workmen's compensation insurance carrier (who had intervened in the action as a party plaintiff). Plaintiff and the insurance carrier appeal, separately, from the second judgment. The record[1] shows the following facts:

---

[1]The major part of the original record on appeal consisted of a clerk's transcript which essentially constituted the judgment roll. (See Code Civ. Proc., § 670.) It was

Albert Patterson, while on the job on April 15, 1965, received an injury which caused his death on July 18 of the same year. The injury having been covered by the Workmen's Compensation Act (Lab. Code, div. 4 [commencing with § 3201]) and insured against by his employer in compliance therewith, an appropriate workmen's compensation proceeding was commenced. In March, 1967, this proceeding resulted in an award of the following benefits payable by the decedent's employer's workmen's compensation insurance carrier: (1) a death benefit in the amount of $17,500, payable to the widow from and after July 18, 1965, at the rate of $70 per week (less her attorney's fees, fixed in the award at $850), (2) "[b]urial expenses in the amount of $600.00," (3) the decedent's "self-procured medical expenses" and (4) temporary disability payments, for the period between the dates of the decedent's injury and his death, "less credit for any sums theretofore [*sic*] paid on account thereof."

In February 1966, the widow (hereinafter "plaintiff") also brought this negligence action, pursuant to Code of Civil Procedure section 377 (see fn. 11, *post*) and against defendant as a third party tortfeasor, seeking damages for the decedent's allegedly wrongful death. In her complaint, she pleaded and prayed general damages in the amount of $200,000 for the loss of the decedent's "care, comfort, society, protection and support," plus "reasonable funeral and burial expenses." In his answer, defendant pleaded among other things that concurrent negligence on the part of the decedent's employer was a proximate cause of the death.

In January 1968, pursuant to Labor Code section 3853, the employer's insurance carrier was permitted to intervene in the action relative to certain payments it had made, and was still making, in compliance with the workmen's compensation award made in March 1967. (We hereinafter refer to the insurance carrier as "intervener.") Answering the complaint in intervention, defendant again pleaded that the negligence of the decedent's employer had been a proximate cause of the decedent's injury and the damages sustained therefrom.

At the time of intervention, the total amount expended by intervener pursuant to the 1967 workmen's compensation award was $12,934.04. The complaint in intervention, seeking recovery of this amount from defendant, alleged that its components were $2,901.90 in medical expenses, $332.14 paid as "disability indemnity," and $9,700 paid in death benefits; it also prayed recovery of death benefits to be paid in the future. When plaintiff's action came to jury trial three months later (in April 1968), continuing

augmented by stipulation to include a "Settled Statement of Facts," which is actually an "agreed statement" as permitted by rule 6(a), California Rules of Court. The facts recited herein are taken from the original record and from the agreed statement.

payments of death benefits to plaintiff had increased the total amount of intervener's expenditures to $14,404.04. There was, at the trial, a stipulation that intervener had paid out the latter amount, but the stipulation did not include an itemization thereof.[2]

The jury was instructed concerning the measure of plaintiff's general wrongful-death damages, if any, and of her special damages, if any, representing the decedent's funeral and burial expenses.[3] The trial court also instructed the jurors that, if they found for plaintiff, they were to fix the damages "without regard to the amount of . . . compensation benefits paid to or for the plaintiff" and to "render one figure as to the total amount of damages"; and that the court would "do" any "deducting" required if they should find, in response to a special interrogatory submitted to them, concurrent negligence on the part of the decedent's employer. No other instructions on damages were given.

The jury returned a verdict for $35,000, in favor of plaintiff and against defendant. (According to the stipulated facts in the agreed statement on appeal, the verdict was "supported in all respects by substantial evidence.") In response to the special interrogatory, the jury further found that the decedent's employer had been concurrently negligent, and that such negligence was a proximate cause of the wrongful death.

Judgment having been entered on the jury verdict, defendant moved the trial court for an order reducing its amount by the full sum ($17,500)[4] of

---

[2]In the limited record on appeal, the stipulation appears in a two-page reporter's transcript of the relevant trial proceedings. According to thereto, the trial court announced (in the jury's absence) that respective counsel for intervener and for defendant (the court did not mention plaintiff's counsel) had proposed to stipulate that, pursuant to the 1967 workmen's compensation award, the decedent's employer (referring, in context, to intervener, the employer's insurance carrier) "was required to and did pay medical [sic] expenses." Referring to a "letter," defendant's counsel then said "I will stipulate that these payments were made pursuant to the . . . [1967 workmen's compensation award] . . . ." (The letter, which presumably itemized the $14,404.04 theretofore expended by intervener, was thereupon marked for identification; it has not, however, been included in the record on appeal.)

Plaintiff's counsel was present during this episode but said nothing by way of joining in the stipulation. In this regard, the agreed statement on appeal recites as follows: "Both during the trial and during argument to the jury, plaintiff's attorney, upon the basis of . . . previous representations by the attorney for the intervener that the sum of $14,404.04 constituted only death benefits, conceded the intervener would be entitled to assert a lien against plaintiff's recovery, in the aforesaid amount, in the event the jury found no concurrent negligence on the part of the employer. Both plaintiff and defendant, relying upon the representations of . . . [intervener] . . ., dispensed with any proof as to the precise components of the sum of $14,404.04."

[3]The instructions given in these respects were BAJI Nos. 175, 175-B (Revised), 175-D, 175-E, and an adaptation of No. 177 (Revised).

[4]The agreed statement shows the amount of the death benefits awarded as "$17,500." The reference therein to defendant's post-judgment motion indicates that

the workmen's compensation death benefits awarded plaintiff in 1967 or, in the alternative, by the $14,404.04 paid by intervener up to the time of trial. At the hearing on the motion, it was established that the $14,404.04 had consisted, not of death benefits only (as intervener's counsel had represented prior to the trial stipulation concerning that figure [see fn. 2, *ante*]), but of death-benefit and other payments made by intervener pursuant to the 1967 award.[5]

Granting defendant's motion, the trial court made formal findings of fact that (1) intervener had paid "to plaintiff"[6] pursuant to the 1967 award and prior to the trial, (2) that intervener owed her additional sums thereunder, (3) "[t]hat a double recovery will result herein if plaintiff enforces the judgment entered on the verdict herein without reduction thereof in the amount of the compensation benefits paid . . . as of the time trial commenced herein," and (4) "[t]hat a double recovery will also result if the monies owed by intervener under said award in the future are paid to plaintiff after payment and satisfaction of the judgment herein."

The findings were followed by conclusions of law that the judgment entered on the verdict should be reduced to $20,595.96 ($35,000 less $14,404.04), and that the remaining monies due under the 1967 workmen's compensation award "should be paid directly to the defendant . . . and that no further payments thereunder be made to plaintiff." A new judgment was entered accordingly.[7]

Upon plaintiff's and intervener's separate appeals from the new judgment, we have concluded that the trial court was correct in reducing the amount

---

the amount was "$18,000." The discrepancy being unexplained, we hereinafter use the $17,500 figure in referring to the death-benefit portion of the 1967 workmen's compensation award.

[5]According to the showing on defendant's motion as summarized in the agreed statement on appeal, the $14,404.04 total included (1) death-benefit payments made to plaintiff in the total amount of $10,220; (2) the decedent's burial expenses, reimbursed to plaintiff in the amount of $600; (3) temporary disability payments made or accrued while the decedent lived after his injury, $332.14 ($120 of which was paid to him in his lifetime, $212.14 paid to plaintiff after his death); and (4) medical expenses incurred while he lived, and paid to the various vendors thereof, in the amount of $3,251.90.

[6]Although the first finding states that the full $14,404.04 was paid "to plaintiff," the agreed statement on appeal shows that some payments thereof were made to others. (See fn. 5, *ante*.)

[7]The new judgment (which was entered as such, without referring to the previous judgment or purportedly modifying it) was in favor of plaintiff and against defendant in the amount of $20,595.96. It also ordered "that judgment be entered herein in favor of defendant and against . . . [intervener] . . ., together with costs of suit herein incurred, and that . . . [intervener] . . . make all future payments due and owing under . . . [the 1967 workmen's compensation award] . . . directly to the defendant herein."

of the first judgment, but that it erred, in the respects hereinafter discussed, in fixing the amount of the reduction; and that, for the latter reason, the judgment must be reversed with directions as hereinafter ordered.

■ The parties agree that a reduction of the $35,000 judgment was required, in principle, under the rule established in *Witt* v. *Jackson* (1961) 57 Cal.2d 57 [17 Cal.Rptr. 369, 366 P.2d 641] and now applicable in an action brought against a third party tortfeasor to recover damages for the injury or death of an employee which was covered by the Workmen's Compensation Act and caused by the wrongful act or omission of the defendant. In such case, the latter may assert that the injury or death was a proximate result of the concurrent negligence of the employer. If he (the defendant) establishes such concurrent negligence, he is entitled to have the judgment against him reduced by the amount of workmen's compensation benefits paid. This result emerges from successive applications of the principles (1) that the employer or his workmen's compensation insurance carrier (the latter of whom commonly appears in such action, as intervener has appeared here) may not profit from the employer's wrong, and (2) that the injured employee or his dependents may not be allowed double recovery of such benefits. (*Witt* v. *Jackson, supra,* at pp. 71-73; *De Cruz* v. *Reid* (1968) 69 Cal.2d 217, 221-223 [70 Cal.Rptr. 550, 444 P.2d 342]; *Slayton* v. *Wright* (1969) 271 Cal.App.2d 219, 230-231 [76 Cal.Rptr. 494]; *Gastelum* v. *City of Torrance* (1969) 2 Cal.App.3d 582, 583 [82 Cal.Rptr. 732]. See 2 Witkin, Summary of Cal. Law (7th ed. 1960) Workmen's Compensation (1969 Supp.) § 17A (New), pp. 810-811; 2 Hanna, California Law of Employee Injuries and Workmen's Compensation (2d ed. 1969) § 23.04(2); Lupton, *Witt* v. *Jackson-Interpretation* (1966) 41. State Bar J. 690; Note (1970) 21 Hastings L. J. 661; Note (1962) 50 Cal. L.Rev. 571.)

■ In the present case, though, the second judgment ordered (1) direct, arithmetical reduction of the original judgment by the amount of the workmen's compensation benefits paid to the time of trial, and (2) that future benefits due plaintiff from intervener under the 1967 workmen's compensation award be made to defendant. The second provision, which operated to include in the required reduction the sum of future benefits payable but yet unpaid under the 1967 award, was erroneous because the amount of such reduction should include only—and no more than—the total workmen's compensation benefits already paid. (*Gastelum* v. *City of Torrance, supra,* 2 Cal.App.3d 582 at pp. 583-585; *Slayton* v. *Wright, supra,* 271 Cal.App.2d 219 at pp. 232-234; *Castro* v. *Fowler Equipment Co.* (1965) 233 Cal.App.2d 416, 421-422 [43 Cal.Rptr. 589]; *Conner* v. *Utah Constr. & Mining Co.* (1964) 231 Cal.App.2d 263, 275 [41 Cal.Rptr.

728]. See 2 Hanna, *op. cit. supra,* § 23.04(2); Lupton, *op. cit. supra,* 41 State Bar J. 690 at pp. 701-710; Note, *supra,* 21 Hastings L.J. 661 at pp. 668-672.)

It further appears that the trial court exceeded its jurisdiction in ordering the death benefits paid to defendant in the future. The 1967 workmen's compensation award having ordered them paid to plaintiff, the court was without jurisdiction to change the award's terms in this respect. (Lab. Code, § 5955.[8] See *Slayton* v. *Wright, supra,* 271 Cal.App.2d 219 at p. 232; *Loustalot* v. *Superior Court* (1947) 30 Cal.2d 905, 910-912 [186 P.2d 673]; *Pizarro* v. *Superior Court* (1967) 254 Cal.App.2d 416, 417-420 [61 Cal.Rptr. 923]; *Vickich* v. *Superior Court* (1930) 105 Cal.App. 587, 589-592 [288 P. 127].) We must reject defendant's contention that Code of Civil Procedure section 187[9] gave the court such jurisdiction. Section 187 merely provides ancillary dimensions to jurisdiction already "conferred on" a court. No such jurisdiction was "conferred" here because Labor Code section 5955 (see fn. 8, *ante*) expressly precluded it.

Defendant contends that the trial court's action requiring the payment of future death benefits to him was the only method by which the rule of *Witt* v. *Jackson* could be effectively applied to the judgment entered on the verdict. Several arguments support his contention in principle. Application of the *Witt* rule to unpaid death benefits is relatively uncomplicated because, although unpaid, their amount is fixed and undisputed. (Cf. *Slayton* v. *Wright, supra,* 271 Cal.App.2d 219 at pp. 231, 233; *Castro* v. *Fowler Equipment Co., supra,* 233 Cal.App.2d 416 at pp. 421-422; *Conner* v. *Utah Constr. & Mining Co., supra,* 231 Cal.App.2d 263 at p. 275.) Ordering them paid to defendant in the future (as opposed to reducing the money judgment against him by their prospective dollar amount) minimized the problems which might arise if plaintiff should die before the benefits have been paid in full. (See Lab. Code, § 4706, subd. (a). Cf. *Gastelum* v. *City of Torrance, supra,* 2 Cal.App.3d 582 at p. 584.) Moreover, the rule denying a reduction of the third party judgment in the full amount of benefits to be paid in the future means that the effect of the *Witt* rule itself,

[8]Section 5955 provides in pertinent part as follows: "No court of this state, except the Supreme Court and the courts of appeal to the extent herein specified, has jurisdiction to review, reverse, correct, or annul any order, rule, decision, or award of the . . . [Workmen's Compensation Appeals Board] . . ., or to suspend or delay the operation or execution thereof, or to restrain, enjoin, or interfere with the appeals board in the performance of its duties . . ."

[9]"187. When jurisdiction *is,* by the Constitution or this code, or by any other statute, *conferred on* a court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this code." (Italics added.)

in any proper case, will be subject to gross variations by reason of time factors. As to benefits which have been permanently fixed, and whether the third party action is for death or injury, a *Witt* reduction of the judgment therein can range from 100 percent of the benefits paid (if sufficient time elapses between the award thereof and trial of the action) down to zero if the action is tried before a permanent award is made. The effect of a substantive rule should not be subject to the vagaries of calendaring.

We have concluded, however, that the conceivable merit of the foregoing arguments lends no validity to the trial court's action with respect to payment of the future benefits here. In the first place, the *Witt* rule itself applies to third party actions in explicit terms of denying the concurrently negligent employer reimbursement for compensation benefits "made," and of reducing employee recovery by the amount he "received"; the *Witt* court made no reference to payments "to be made" or "to be received." (*Witt* v. *Jackson, supra,* 57 Cal.2d 57 at p. 73. Compare the reference to compensation "paid or payable" in one of the decisions principally relied upon in *Witt* (*id.* at pp. 71, 72) (*Lovette* v. *Lloyd* (1953) 236 N.C. 663 [73 S.E.2d 886, 891, 892, 893]); see Lupton, *op. cit. supra,* 41 State Bar J. 690 at pp. 701-702.)

Secondly, the relevant statutes and decisions which refer to reimbursement of benefits "to be paid" (or which the employer has "become obligated to pay,") speak only to recovery thereof by an employer, directly or by lien, not to *Witt* reduction of a third party judgment in the event the employer's right to recovery is defeated by his concurrent negligence. (See Lab. Code, §§ 3852, 3854, 3855; *Heaton* v. *Kerlan* (1946) 27 Cal.2d 716, 723 [166 P.2d 857]; *Smith* v. *Trapp* (1967) 249 Cal.App.2d 929, 936 [58 Cal.Rptr. 229]; *Merino* v. *Pacific Coast Borax Co.* (1932) 124 Cal.App. 336, 344 [12 P.2d 458]; *Globe Indem. Co.* v. *Henderson* (1921) 54 Cal.App. 510, 514 [202 P. 797].) On the other hand, the clear weight of post-*Witt* decisions (which the Supreme Court can overrule, but which we are not free to ignore as precedent) indicates that the trial court erred in principle by applying *Witt* v. *Jackson,* to the original third party judgment here, so as to reach the yet-unpaid death benefits. (*Gastelum* v. *City of Torrance, supra,* 2 Cal.App.3d 582 at pp. 583-585; *Slayton* v. *Wright, supra,* 271 Cal.App.2d 219 at pp. 232-234; *Castro* v. *Fowler Equipment Co., supra,* 233 Cal.App.2d 416 at pp. 421-422; *Conner* v. *Utah Constr. & Mining Co., supra,* 231 Cal.App.2d 263 at p. 275.) Had the court's action been valid in principle, moreover, it could not be taken through the device employed here (ordering intervener to pay such benefits to defendant) because the court lacked jurisdiction to change the terms of the 1967 workmen's compensation award. (Lab. Code, § 5955 [see text at fn. 8,

*ante*].) For these overriding reasons, the provision in the judgment relative to payment of future death benefits cannot stand.

■ The other question on the appeal is whether the second judgment correctly reduced the amount of the first one by the dollar figure of $14,404.04. **(4)** Defendant urges that we should sustain the $14,404.04 reduction because plaintiff should not be permitted to "retreat" from the stipulation to that figure made at the trial. But the only actual "stipulation" shown in the record on appeal was between respective counsel for defendant and for intervener, and was to the sole effect that the latter had actually paid out $14,404.04 prior to the trial and pursuant to the 1967 workmen's compensation award. (See fn. 2, *ante*.) The stipulated fact was undisputed then and is undisputed now. Counsel for plaintiff did not join in the stipulation. (*Id.*) So far as appears in the parties' agreed statement, he only "conceded," upon the basis of representations previously made by intervener's attorney, that intervener would be entitled to a lien, in the amount of $14,404.04 and against any judgment recovered by plaintiff, "*in the event* the jury found *no* concurrent negligence on the part of the employer [defendant]." (*Id.* [italics added].)

The "concession" made on plaintiff's behalf was limited to the amount of the lien which would result, in intervener's favor, if the jury found for plaintiff and absolved the employer of concurrent negligence. The concession did not speak to the amount of any offset against plaintiff's recovery if the jury found otherwise as to the employer.[10] The two amounts (both of which, during the trial, were viewed prospectively) were not necessarily identical: the limits of the former were fixed by statute (Lab. Code, § 3856, subd. (a); see *id.,* §§ 3852, 3854, 3855), while the latter would include only those of intervener's expenditures which would represent a double recovery by plaintiff. (*Witt* v. *Jackson, supra,* 57 Cal.2d 57 at p. 73.) Plaintiff's "concession" was contingent upon the jury's exonerating the employer; the contingency failed when the jury found otherwise. For these reasons, plaintiff is not bound by her "concession," and she is not seeking to "retreat," on appeal, from any stipulation which bound her as to the question of offset which is before us. (See *City of Ukiah* v. *Fones* (1966) 64 Cal.2d 104, 110-111 [48 Cal.Rptr. 865, 410 P.2d 369].)

■ As we may therefore consider the $14,404.04 reduction on its

---

[10]Defendant has referred, on the appeal, to plaintiff's "agreement made at the beginning of the trial to the effect that . . . [defendant] . . . would be entitled to *a reduction* of $14,404.04 in the event of the finding of employer negligence plus proximate cause." (Italics added.) As we here indicate, the relevant recitals in the agreed statement on the appeal (see fn. 2, *ante*) reflect no "agreement" to the effect asserted by defendant, and they wholly refute his interpretation of plaintiff's "concession" concerning the $14,404.04.

merits, the question is reduced to whether the rule prohibiting double recovery (*Witt* v. *Jackson, supra,* 57 Cal.2d 57 at p. 73) applied to each of the four categories (considered separately) of the $14,404.04 paid out by intervener before the trial. (See fn. 5, *ante.*) In her wrongful death action, brought by plaintiff in her own right as the decedent's sole heir, she could recover—and she properly pleaded—general damages for her pecuniary loss in having been deprived of the decedent's care, comfort, society and support. (Code Civ. Proc., § 377; *Benwell* v. *Dean* (1967) 249 Cal.App.2d 345, 349 [57 Cal.Rptr. 394] and cases cited.) She could also recover, and she properly pleaded, damages for the decedent's burial expenses. (*Adams* v. *Southern Pac. Co.* (1935) 4 Cal.2d 731, 743-744 [53 P.2d 121]; *Francis* v. *Sauve* (1963) 222 Cal.App.2d 102, 124 [34 Cal.Rptr. 754].) The jury having heard evidence and received instructions on both subjects (see fn. 3, *ante*), its $35,000 verdict obviously constituted recovery of both. It follows that, to avoid double recovery of either item by plaintiff under the first judgment, the second judgment correctly reduced it by the sum of both (i.e., the sum of death benefits and burial expenses paid by intervener before the trial).

The other two elements of the $14,404.04 reduction were intervener's pretrial payments of the decedent's medical expenses and temporary disability indemnity. Of the latter ($332.14), $120 had been paid to him while he lived; the remaining $212.14, having accrued in his lifetime, was paid to plaintiff, as his "dependent," after his death. (Lab. Code, § 4700.) (See fn. 5, *ante.*) According to the 1967 workmen's compensation award, the medical expenses were "self-procured," meaning that the decedent incurred them in his lifetime. The temporary disability payments related to his loss of earnings while he lived, not to plaintiff's loss of support by reason of his death. Hence, both items—the medical expenses and the temporary disability indemnity paid by intervener before the trial—represented "loss or damage . . . sustained or incurred [by the decedent] prior to his death" within the meaning of Probate Code section 573.[11] Damages therefore were recoverable in an action brought by his executor or adminis-

---

[11]Probate Code section 573 provides in pertinent part as follows: "Except as provided in this section no cause of action shall be lost by reason of the death of any person but may be maintained by . . . his executor or administrator. . . . When a person having a cause of action dies before judgment, the damages recoverable by his executor or administrator are limited to such loss or damage as the decedent sustained or incurred prior to his death, . . . and shall not include damages for pain, suffering, or disfigurement. . . ."

As pertinent thereto, Code of Civil Procedure section 377 provides as follows: "When the death of a person not being a minor, . . . is caused by the wrongful act or neglect of another, his heirs . . . may maintain an action for damages against the person causing the death. . . . In every action under this section, such damages may be given as under all the circumstances of the case, may be just, but shall not include damages recoverable under Section 573 of the Probate Code. . . ."

trator pursuant to that statute, but not in this action brought by plaintiff in her own right as his heir.[12] (Code Civ. Proc., § 377 [see fn. 11, *ante*]; Prob. Code, § 573 [*id.*]; *Gallup* v. *Sparks-Mundo Engineering Co.* (1954) 43 Cal.2d 1, 10-11 [271 P.2d 34] [reading Code of Civil Procedure section 377 with former Civil Code section 956, the statutory predecessor of Probate Code section 573]. See *Williams* v. *Dowling* (3d Cir. 1963) 318 F.2d 642, 644; 2 Hanna, *op. cit. supra*, § 23.05 (c).)

As neither item was recoverable, no evidence of either was offered and the jury was instructed on neither. (See fn. 3, *ante.*) It successively follows that the $35,000 judgment on the verdict included no recovery of either item, there could be no double recovery of either by plaintiff, the trial court's finding to the contrary (as to these two items) was unsupported by any evidence or was erroneous as a conclusion of law, the rule of *Witt* v. *Jackson* did not apply to either item, and the court erred in reducing the $35,000 judgment by the amount of both.

Recapitulating the foregoing: The trial court correctly reduced the $35,000 judgment by $10,820 ($10,220 in death benefits plus $600 in burial expenses), but not by $3,584.04 ($3,251.90 in medical expenses plus $332.14 expended by intervener in temporary disability payments). The amount of the reduced judgment should therefore have been $24,180, and its effective date for all relevant purposes should be April 25, 1968 (the date upon which the original, subsequently reduced judgment was entered upon the jury's verdict).

The judgment entered herein on June 27, 1968, is reversed. The cause is remanded to the trial court with directions to enter judgment, as of April 25, 1968, in favor of plaintiff and against defendant in the amount of $24,180 (plus plaintiff's costs of suit), and in favor of defendant and against intervener (with costs of suit) under the complaint in intervention; and to include therein no provision relative to workmen's compensation benefits due plaintiff but unpaid prior to the commencement of trial herein.

Devine, P. J., and Christian, J., concurred.

A petition for a rehearing was denied September 28, 1970, and the opinion and judgment were modified to read as printed above. Respondent's petition for a hearing by the Supreme Court was denied October 28, 1970.

---

[12]Nor could plaintiff recover the medical expenses, in this action, by reason of her statutory liability for her husband's medical expenses as "common necessaries of life," because there is no evidence that she paid or incurred them (*Gallup* v. *Sparks-Mundo Engineering Co.* (1954) 43 Cal.2d 1 at pp. 11-12 [271 P.2d 34]; *Follansbee* v. *Benzenburg* (1954) 122 Cal.App.2d 466, 475 [265 P.2d 183, 42 A.L.R.2d 832]), and because she neither pleaded nor proved them. The fact that $212.14 in temporary disability indemnity was actually paid to plaintiff occurred by grace of the statute requiring such payment (Lab. Code, § 4700), without affecting the character of the $212.14 as "loss or damage . . . sustained or incurred [by the decedent] prior to his death . . ." (Prob. Code, § 573.)